MATTHEW CZECH v. GREAT NORTHERN RAILWAY COMPANY.[1]

April 26, 1897.

Nos. 10,149—(60).

**Railway Crossing—Bell.**

The statute requiring the locomotive bell to be rung or the whistle sounded 80 rods from the place where a railway crosses a traveled road or street does not apply to private farm crossings.

**Same—Reasonable Care.**

But it does not follow that a railway company never, under any circumstances, owes to the adjacent landowner the duty of giving a warning signal that a train is approaching his crossing. The question is to be determined on general legal principles, whether, under all the circumstances, reasonable care required the giving of such a signal.

**Same.**

While, as a general rule, and under ordinary circumstances, a railway company owes no such duty, yet the crossing may be so peculiarly dangerous, and the speed of the train so great, that reasonable care would require the giving of such a signal.

**Question for Jury.**

Held, that under the facts of this case, in view of the peculiarly dangerous nature of the crossing and the unusually high speed of the train, it was a question for the jury whether it was negligence on the part of the defendant not to give a signal of the approach of the train.

Appeal by defendant from an order of the district court for Wright county, Elliott, J., denying its motion for judgment, notwithstanding a verdict of $3,000 for plaintiff. Affirmed.

1 Reported in 70 N. W. 791.

*W. E. Dodge*, for appellant.

The crossing in question being a private farm way, the statute relating to the giving of signals does not apply. Sather v. Chicago, 40 Minn. 91; Brooks v. New York, 13 Barb. 597. Since the statute provides at what crossings signals shall be given, a railroad may operate its trains over other crossings without such signals. Chenery v. Fitchburg, 160 Mass. 211-213; Reynolds v. Great Northern, 69 Fed. 808, 16 C. C. A. 435; Johnson v. Louisville, 60 A. & E. R. Cas. 648, authorities cited and note; Alabama v. Linn, 103 Ala. 134; Pratt v. Davis, 79 Ala. 308; Tanner v. Louisville, 60 Ala. 621; Brown v. Milwaukee, 22 Minn. 165; Beisiegel v. New York, 40 N. Y. 9; Bellefontaine v. Hunter, 33 Ind. 335.

It is the doctrine in all the states, except Kansas, that a person approaching a dangerous crossing when one or more of his senses is impaired by existing conditions, such as an obstruction in the view, a storm and the like, is bound not only to look and listen, but to stop before passing upon the track, in order to ascertain whether a train is approaching. Houghton v. Chicago, 99 Mich. 308; Chicago v. Crisman, 19 Colo. 30; Schaefert v. Chicago, 62 Iowa, 624; Seefeld v. Chicago, 70 Wis. 216; Kelsey v. Missouri, 129 Mo. 362; Jobe v. Memphis, 71 Miss. 734; Ellis v. Lake Shore, 138 Pa. St. 506; Littaur v. Narragansett, 61 Fed. 591; Shufelt v. Flint, 96 Mich. 327; Durbin v. Oregon, 17 Ore. 5; Flemming v. Western, 49 Cal. 253; Dunning v. Bond, 38 Fed. 813; Reading v. Ritchie, 102 Pa. St. 425.

*F. D. Larrabee, F. E. Latham, J. J. Wooley* and *J. C. Tarbox*, for respondent.

Thomas v. Delaware, 8 Fed. 729; Cordell v. New York, 70 N. Y. 119; Chicago v. Sanders, 154 Ill. 531; Vandewater v. New York, 135 N. Y. 583; Hanks v. Boston, 147 Mass. 495; Owens v. Pennsylvania, 41 Fed. 187; Reifsnyder v. Chicago, 90 Iowa, 76; Clampit v. Chicago, 84 Iowa, 71; Mason v. Chicago, 89 Wis. 151; Swift v. Staten Island, 123 N. Y. 645; Pearce v. Humphreys, 34 Fed. 282; Armstrong v. New York, (R. I.) 29 Atl. 448; Gurley v. Missouri, 122 Mo. 141; Murphy v. Boston, 133 Mass. 121; O'Connor v. Boston, 135 Mass. 352; Adams v. Iron Cliffs, 78 Mich. 271; Sanborn v. Detroit, 91 Mich. 538; Hydraulic Works v. Orr, 83 Pa. St. 332; Schindler v. Milwaukee, 87 Mich. 400; Larkin v. New York, 19 N. Y. Sup. 479; Chicago v. Caulfield, 63 Fed.

396; Texas v. Neill, (Tex. Civ. App.) 30 S. W. 369; Mark v. St. Paul, 30 Minn. 493; S. C. 32 Minn. 208; Kay v. Pennsylvania, 65 Pa. St. 269; Troy v. Cape Fear, 99 N. C. 298; Owens v. Pennsylvania, 41 Fed. 187; Turner v. Fitchburg, 35 A. & E. R. Cas. Note, 320; Kelly v. Southern, 28 Minn. 98; Cahill v. Cincinnati, 92 Ky. 345; City Council v. Weller, 34 So. Car. 357; Hinkle v. Richmond, 109 N. C. 472; Schindler v. Milwaukee, 49 A. & E. R. Cas. 468, Note, S. C. 87 Mich. 400; Carraher v. San Francisco, 100 Cal. 177; Chenery v. Fitchburg, 160 Mass. 211; Hankinson v. Charlotte, 60 A. & E. R. Cas. Note, 652; Westaway v. Chicago, 56 Minn. 28; Stewart v. Pennsylvania, 130 Ind. 242; 11 A. & E. R. Cas. Note, 681; Sweeny v. Old Colony, 10 Allen, 368; Morrissey v. Eastern, 126 Mass. 377; O'Connor v. Boston, 135 Mass. 352; Taylor v. Delaware, 113 Pa. St. 162; Thomas v. Delaware, 8 Fed. 729; Cordell v. New York, 64 N. Y. 535; Byrne v. New York, 94 N. Y. 12; Hodges v. St. Louis, 71 Mo. 50; Bauer v. Kansas, 69 Mo. 219; Merz v. Missouri, 14 Mo. App. 459; Indiana v. Hudelson, 13 Ind. 325; Murphy v. Boston, 133 Mass. 121; Byrne v. New York, 104 N.Y. 362; Delaney v. Milwaukee, 33 Wis. 67; Townley v. Chicago, 53 Wis. 626; Davis v. Chicago, 58 Wis. 646; Harriman v. Pittsburg, 45 Ohio, 11, were cited.

MITCHELL, J.   The plaintiff brought this action to recover damages for personal injuries sustained by reason of a collision with one of defendant's passenger trains at a private crossing on plaintiff's farm.   The negligence alleged and relied on at the trial as the ground of plaintiff's right of action was that the train approached the crossing, at a high and dangerous rate of speed, without any signal or warning being given of its approach.

The only question in the case worthy of special consideration is whether the evidence justified a verdict for the plaintiff.   The case made by the plaintiff was by no means a strong one, but, after carefully examining and re-examining the evidence, we have arrived at the conclusion that it made a case for the jury; in other words, that we cannot hold, as a matter of law, either that the defendant was not guilty of negligence, or that the plaintiff was guilty of contributory negligence.

The crossing was immediately east of a "cut" on defendant's road over 800 feet long, and varying in depth from nearly 6 feet at the east end to nearly 11 feet at the center, or deepest point.   The defendant

had permitted trees and brush to grow and remain on the sides or slopes of this cut, which materially added to the obstruction to the view westward. The crossing was therefore an exceedingly dangerous one to a person approaching it from the north, because of his inability to see trains coming from the west until he reached a point very near the railroad track. Plaintiff was about to drive his team, hitched to a farm wagon, from his house, on the north side of the railroad, over this crossing, to that part of his farm on the south side.

He testified that, when he reached the gate in the railway fence (a distance of about 60 odd feet from the track), he stopped his team, went down upon the railroad track, and looked both east and west, but neither saw nor heard any train. The evidence shows that, if he did this, he would have a view of the track westward for a distance of from 1,600 to 1,800 feet. He further testified that he then drove through the gate upon the right of way, and, before crossing the track, stopped his team and listened for a train, and, hearing none, then drove on, still looking and listening, but that he neither saw nor heard the train until it was within about 100 feet of him, when his horses were already on the track. His testimony was corroborated by that of his daughter, who was riding in the wagon with him. There are some circumstances which tend to create doubt as to the entire accuracy of this testimony, but its credibility and weight were questions for the jury.

Notwithstanding that this was a private crossing, where the defendant was neither accustomed, nor required by statute, to give signals of the approach of trains, and although it appears that plaintiff was entirely familiar with the situation, and knew that this train was due from the west at or about this time, we could not hold, as a matter of law, that he was guilty of contributory negligence, if his testimony and that of his daughter was true, which was a question for the jury.

2. The remaining question is whether the evidence justified the jury in finding that the defendant was negligent. We agree with counsel for the defendant that the statute [2] requiring a bell to be rung or a whistle to be sounded at least 80 rods from the place where a railway crosses a "traveled road or street" on the same level does not ap-

[2] G. S. 1894, § 6637.

ply to private farm crossings. It only applies to public roads; that is, roads traveled by the public. A mere farm crossing, designed exclusively for the convenience of the adjacent landowner, is never spoken of, either in the statutes or in common speech, as a "road." Probably the object in using the term "traveled road," instead of "highway" or "public highway," was to include roads actually used and traveled as public highways, without regard to whether they have been legally laid out or dedicated as such.

But it does not necessarily follow from this that a railway company may never, under any circumstances, owe a duty to the adjacent landowner to give a signal or warning of an approaching train. It merely leaves the question to be determined on common-law principles, whether, under the circumstances of the case, reasonable care would have required the giving of such a warning.

It may be conceded that as a general rule, and under ordinary circumstances, a railway company owes no duty to the adjacent landowner to give him a warning signal, or to slacken the speed of its trains, on approaching a private crossing. The necessities of public travel and of the railway company would not permit of this; and when such a crossing is put in for the convenience of an adjacent landowner, although he has, of course, a legal right to its reasonable use, he must take it subject to the risk or burden incident to this condition of things. But reasonable care means the degree of care commensurate and corresponding with the situation. While in certain respects the rights of the adjacent landowner to use the crossing must, from the necessities of the case, be subordinate to the rights of the railway company to use its road, yet the rights and duties of each are correlative and reciprocal; and, in exercising its or his right, each must bear in mind the right of the other to use it also, and use reasonable care to avoid injury to such other while in the exercise of such right.

Therefore, while there is no statutory obligation on a railroad company to give a signal of the approach of a train to a private crossing, yet the condition of a crossing as a peculiarly hazardous one, for any reason, coupled with the high rate of speed at which a train is running, may render the case one where reasonable care would require that some warning signal should be given. Thomas v. Delaware, 8 Fed. 729. In the present case this crossing was, for the reasons al-

ready stated, a peculiarly dangerous one. This was, or ought to have been, fully known to the defendant and its servants. They knew that plaintiff was liable to be using the crossing.

There was evidence that would justify the conclusion that this train, although on schedule time, was running at an unusual rate of speed. We attach very little weight to the mere opinions or estimates of nonexpert bystanders or passengers to that effect, but the case furnishes evidence of a more satisfactory character. The testimony of the engineer is that the schedule time of the train, including stoppages, was about 27 miles an hour, and that its usual actual running time between stations was about 30 miles an hour. It was a regular passenger train, presumably supplied with all the usual modern appliances, such as air brakes. The engineer testified that he knew of the collision the moment it occurred, and immediately applied the brakes with full force. But there is evidence tending to prove that the engine ran over 900 feet past the crossing before the train was brought to a full stop. We refer to the testimony of the measurement of the distance from the crossing to the place where the broken glass was found which was taken out of the cab window after the train stopped. There is no evidence that the grade was a descending one, or that the track was wet or slippery. This, corroborated as it was by some other evidence, would, we think, have warranted the jury in finding that the train was running at an unusually high rate of speed.

Considering the peculiarly dangerous nature of the crossing, and the high rate of speed at which the evidence tended to show that the train was running, we think it was a question for the jury whether the defendant was negligent in not giving some warning signal, and hence we cannot say that their verdict is not supported by the evidence.

In response to some questions of pleading raised by counsel, we may add that while the complaint was evidently drawn on the theory that the statute imposed a duty on defendant to give a signal on approaching the crossing, and also that its custom previously had been to give such a signal, yet its allegations are broad enough to entitle the plaintiff to recover on common-law grounds, and irrespective of the existence of the custom referred to.

Order affirmed.