Coös,
June 3, 1941. } No. 3239.

### WARREN E. DOWSE *v.* MAINE CENTRAL RAILROAD.

*Leon D. Ripley* and *Crawford D. Hening* (*Mr. Hening* orally), for the plaintiff.

*Hinkley & Hinkley* (*Mr. Irving A. Hinkley* orally), for the defendant.

MARBLE, J. The plaintiff's farm was situated in the town of Stratford, and the accident occurred on September 20, 1939. The defendant's track at the place of the accident ran approximately north and south. The track of the Canadian National Railway paralleled it on the west, and the plaintiff's meadow lay west of that track. A fence ran along the defendant's right of way on the east, and a gate in this fence gave access by way of the crossing in question to the strip of land between the two sets of tracks. There was a fence about sixty feet west of the Canadian National track, and a gate in that fence opened into the meadow.

The plaintiff had occupied his farm for about nineteen years. Each fall, beginning about the first of September, he was accustomed to turn his herd of cows into the meadow for fall feeding, driving the cows over the crossing in the morning and back late in the afternoon.

The approach to the crossing from the west was up a sharp incline.

At about half past four on the afternoon of the accident the plaintiff's son went to the meadow in his automobile to drive the cows (about twenty in number) to the barn. After he had collected the herd at the west gate, he "listened for trains," then opened the gate and returned to his automobile. Starting the car, he drove the cows ahead of it across the Canadian National track and toward the east gate, which he had left open on his way to the meadow. The distance from the west gate to the defendant's track was about 150 feet. While the cows were crossing this track a southbound train comprising an engine and ten or twelve cars struck the last three cows. The locomotive whistle was blown almost simultaneously with the accident; the bell did not ring at all. This train was the only regular daily southbound train passing the plaintiff's farm.

The track approached the crossing on a curve flanked by high knolls. A train could be seen north of the crossing for a distance of approximately 318 feet. The defendant had posted a sign on the east fence stating that no signals would be given by approaching trains. This fact was known to the plaintiff and his son. The train was more than two hours late and was running at a speed of forty or forty-five miles an hour, which was from ten to twenty miles an hour faster than its usual speed. The plaintiff's son knew that this train was frequently late. He did not know whether it had passed the farm or not when he started to drive the cows toward the crossing.

Although the defendant was under no statutory obligation to give warning of the train's approach (*Wentworth* v. *Railroad*, 86 N. H. 251, 252), it was not absolved from the duty of exercising a degree of care commensurate with the known situation. *Stocker* v. *Railroad*, 83 N. H. 401, 404; *Morris* v. *Railroad*, 85 N. H. 265, 274; *Czech* v. *Railway*, 68 Minn. 38, 42, 43; 22 R. C. L. 1004, 1005.

Each fall for the past nineteen years the plaintiff had been pasturing his cows in the meadow adjoining the tracks. Trainmen passing the farm each day must have seen them there and have understood that they would be driven back across the track to the barn before nightfall. The defendant was charged with knowledge of these facts. *Lovett* v. *Railway*, 85 N. H. 345, 349. Under such circumstances the jury was entitled to find that due care on the defendant's part required a relatively slow and careful operation of the train over the crossing at that particular hour, and that the running of the train at unusual speed and without warning of its approach constituted negligence.

The posted sign, to which reference has been made, comprised the printing in full of section 4 of chapter 380 of the Public Laws, relating to gates at private crossings, together with the following notice: "This is a Private Crossing, and the gates or bars must be kept closed. NO SIGNALS ARE GIVEN BY APPROACHING TRAINS. TRESPASSERS ARE FORBIDDEN TO ENTER OR CROSS HERE. Any person using the crossing must close the gates or bars securely, and for failure so to do will be prosecuted to the full extent of the law."

The plaintiff's son testified that the notice had been placed on the fence about four years before. In answer to an inquiry as to what "in the way of caution" he or his father then did, he said: "There wasn't much we could do." The fact that the plaintiff acted with knowledge of this notice did not preclude recovery as a matter of law. The doctrine of assumption of risk is applicable only to the master and servant relation. *Papakalos* v. *Shaka*, *ante*, 265, and cases cited. The plaintiff's son further testified that he "listened toward the north" before opening the west gate and that he heard nothing, and that "all the time while those cows were coming through there" he "kept an eye north." He protested that there was not a thing he could have done which he did not do "to protect the cows."

He was not obliged to ascertain definitely that the train had passed. Such an obligation would have entailed a long vigil. Nor was his method of driving the cows necessarily negligent. There is no direct evidence concerning the noise made by his car, nor is there anything in the record that renders conclusive the suggestion that if he had been on foot instead of in an automobile "he would have heard the approach of the train sufficiently soon to have taken some action to get the cattle out of the way." The issue of contributory negligence was for the jury.

The defendant excepted to the admission of evidence that its station agent directed a livestock dealer to take possession of the carcasses of the cows. Since evidence of that fact had already been introduced without objection, the exception is unavailing. *State* v. *Harmon*, 88 N. H. 267, 270; *Charles G. Clapp Co.* v. *McCleary*, 89 N. H. 65, 66.

The defendant excepted to the submission to the jury of the question "whether there was anything in the ordinary use of the crossing to call for special protection." The time necessarily required to drive the cows from the west gate across the Canadian National track to the defendant's right of way and up the sharp grade to the crossing presented a situation which the jury might properly find

demanded a high degree of care on occasions when the train was as late as it was on the day of the accident. As employed by the Presiding Justice, the term "special protection" had reference to some precaution other than the notice warning the plaintiff that no signal would be given. The submission of the issue to the jury was not error.

The defendant also excepted to the submission of the question whether or not a "warning signal" should have been given. If by this term the Presiding Justice had meant the warning required to be given whenever a locomotive approaches within eighty rods of a grade crossing over a highway (P. L., c. 249, s. 23), there would be much force in the defendant's argument that a warning signal would not have prevented the accident. But the term was not so defined.

All persons are aware that the sound of a locomotive whistle carries for a very considerable distance, and the jury may well have concluded in the light of the judge's charge that due care under the peculiar circumstances of the case (one circumstance being the lateness of the train) demanded a continuous ringing of the bell and prolonged or repeated blasts of the whistle, and that these signals should have been commenced at a point far north of the crossing. Since the plaintiff's son was at all times within five feet of the cows, a finding that if such signals had been given he could have kept the cows from the track long enough for the train to pass was justified by the evidence.

The necessity for warning signals, the point at which, if reasonably required, they should have been initiated, and their efficacy, if given, were all questions of fact properly dealt with by the Presiding Justice in his instructions to the jury.

After the defendant had moved for a nonsuit, the plaintiff was permitted to reopen the case and introduce evidence relating to the speed of the train. The defendant excepted on the ground that the only allegations of negligence in the writ were "failure to give a signal and failure to cut down the banks along both sides of the track." The evidence was admissible. The speed of the train was a circumstance to be considered in determining the necessity for signals. *Watkins* v. *Railroad*, 83 N. H. 10, 12; *Perreault* v. *Company*, 87 N. H. 306, 311. Furthermore, although excessive speed is not specifically alleged in the declaration, it is there stated in general terms that the defendant "negligently, unskillfully and unlawfully managed, governed, controlled and conducted said engine and train," and that "for want of good and sufficient care and management

thereof," the plaintiff sustained his loss. It was within the discretion of the trial court to permit the plaintiff to reopen his case. *Stone* v. *Mills*, 71 N. H. 288, 290.

The defendant's exceptions are overruled.

*Judgment on the verdict.*

ALLEN, C. J., concurred in the result: the others concurred.