[No. 36075.   En Banc.   November 21, 1962.]

OWEN D. YOUNG, *Appellant*, v. THE CITY OF SEATTLE, *Respondent.**

*Reported in 376 P. (2d) 443.

*Regal & McDonell* and *John Patrick Cook,* for appellant.

*A. C. Van Soelen, Charles R. Nelson,* and *Gordon F. Crandall,* for respondent.

HAMILTON, J.—October 23, 1959, at approximately 8:40 a. m., plaintiff, Owen D. Young, was a passenger in a Seattle city bus, seated opposite the rear door. He had signaled his intention to get off at the next stop, a "short block" away. As he arose from his seat, the bus came to a sudden stop. He was thrown to the floor and injured. He commenced this action against the city alleging as negligence the sudden stopping of the bus.

The city's answer denied that its bus driver was negligent, asserting the sudden stop was occasioned by an emergency created by an automobile driven abruptly in front of the bus.

The jury returned a verdict for the plaintiff. The trial court granted judgment notwithstanding the verdict, and dismissed plaintiff's action, upon the ground that the evidence failed to establish negligence on the part of defendant's bus driver.

Plaintiff's appeal presents a single question: Was there substantial evidence, direct or circumstantial, to support the jury's verdict? Our answer to this question is in the affirmative.

In reviewing the record, we, as was the trial court, are committed to the familiar rule:

". . . In ruling on a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the party against whom the motion is made, and all material evidence favorable to the contention of the party benefited by the verdict must be taken as

true. If there is substantial evidence supporting the verdict of the jury, as distinguished from a mere scintilla of evidence, the verdict must stand. . . . " *Grange v. Finlay,* 58 Wn. (2d) 528, 529, 364 P. (2d) 234.

■ An examination of the record in the favorable light required reveals the following factors established by the evidence: (a) Immediately preceding the stop in question, the bus had pulled away from a regular bus stop, around parked vehicles, and was traveling from 5 to 15 miles per hour; (b) traffic was heavy; (c) an automobile, traveling at about twice the speed of the bus, passed and turned, from the adjacent traffic lane, into the traffic lane ahead of the bus; and (d) the automobile did not slow down or stop ahead of the bus.

The bus driver, on cross-examination, testified concerning the proximity of the automobile, and the manner of applying his brakes:

"Q. Now when did you first notice this little car that you are talking about cut in front of you? A. Well, the first time he had my direct attention was just about at the time he pulled in in front of me. . . . Q. Now when you applied your brakes did you apply them in an emergency manner, that is, apply them hard enough to bring you to a stop? A. Yes. Q. You slowed down to practically nothing almost immediately then, didn't you? A. Right. . . . Q. Now could you actually determine how much distance there was between your bus and that car? A. At the moment he pulled in front of me? Q. Yes, at the moment you hit your brakes. A. Well, I could take a guess because I couldn't actually see it because you sit so far in toward the center. Q. You couldn't actually see how much distance there was. You could only guess, is that right? A. Right, uh-huh."

Passenger-witnesses called by the city estimated the automobile to be in close proximity to the bus. Plaintiff, who was not looking toward the front of the bus, did not see the automobile.

As to the violence of the stop in question, plaintiff testified:

"A. . . . I was sitting on the outside edge and the handrail comes out on the bus seat—on the back of the bus

seat—and I started to raise up. I guess I must have got halfway up and this bus came to such a sudden stop or jerk that it seemed to throw me back towards—south—and then it really went forward with such violence that it jerked me loose from my seat handle. . . . Q. Where did you go? What happened to you after the jerk pulled you loose from the seat handle? A. Well, it threw me up the aisle I imagine about three or four seats on my head and neck and shoulders. Q. I see. Now you said you were holding onto the handle, the arm of the chair that you were sitting on. Were you holding on loosely or tightly or how were you holding onto that? A. Well, I was holding on to it so tight that my little finger and the one next to it run into the flesh of my hand so that is not very easy."

In *Wilcoxen v. Seattle,* 32 Wn. (2d) 734, 737, 738, 739, 203 P. (2d) 658, affirming a judgment for plaintiff, we said:

"It is the general rule that such jerks or jars as are necessarily incident to the use of the conveyance and are not the result of negligence, will not render the carrier liable for resulting injuries. [Citing cases.] . . .

"It is, however, actionable negligence to cause a conveyance to give a violent or extraordinary jolt, causing injury to a passenger. *Cassels v. Seattle,* 195 Wash. 433, 81 P. (2d) 275. Whether a given jerk or jolt was 'violent' or 'extraordinary' or 'usual' is ordinarily a question of fact to be determined by the jury. . . .

"In *Keller v. Seattle, supra* [200 Wash. 573, 94 P. (2d) 184], we considered the problem of under what circumstances the evidence that a jerk has been violent or unusual is sufficient to carry a case to the jury. In that case, we quoted the following from *Endicott v. Philadelphia Rapid Transit Co.,* 318 Pa. 12, 177 Atl. 17:

" ' " . . . there must be evidence inherently establishing that the occurrence was of an unusual and extraordinary character, or evidence of its effect on other passengers sufficient to show this." ' (Italics ours.)

" . . .

" . . . The record presents evidence indicating that Mr. Wilcoxen was seated near the center exit of the bus when he rose to get off at this exit. He was turning around, and, before he could grasp a handle, he 'went up in the air, and down,' staggering or sliding, and rolling toward the front of the bus, at least as far as the second cross-seat, where the witness, Mr. Stanhope, was sitting, bumping his

head and leaving him somewhat dazed, so that he had to be helped to his home. From this testimony, it seems that there was sufficient evidence from which the jury could find, in the words of the *Endicott* case, *supra,* that the occurrence was 'of an unusual and extraordinary character,' indicating negligent operation of the bus; and this is particularly true where, as here, and as in the *Keller* case, *supra,* the stop occurred while the car was traveling between intersections."

In the *Wilcoxen* case, *supra,* as in the instant case, the city's evidence projected an automobile into the path of the bus. In this case, as in the *Wilcoxen* case, the jury was instructed upon the emergency doctrine. In the *Wilcoxen* case, the question with respect to the applicability of the emergency rule revolved around wherefrom and when the offending automobile appeared. In the instant case, the applicability of the rule hinges upon the relative positions and speeds of the respective vehicles.

We are satisfied that, from the factual pattern here presented, by substantial evidence, and the reasonable inferences therefrom, the jury would be entitled to find: (1) Under existing traffic conditions, the turning of a vehicle from an adjacent traffic lane into the traffic lane of the bus was a reasonably foreseeable occurrence; (2) the stopping of the bus, occurring where and in the manner it did, was "unusual and extraordinary"; (3) an emergency, justifying such a violent stop, did not exist because of the relative traveling positions and speeds of the respective vehicles; and (4) the bus driver, in his operation of the bus, under the circumstances, failed to exercise the degree of care required of him.

The judgment and the order granting judgment notwithstanding the verdict are reversed, and the cause remanded for entry of judgment in accordance with the verdict of the jury.

Plaintiff will recover his costs.

ALL CONCUR.