[No. 36912.    En Banc.    October 29, 1964.]

GLEN MULKEY, *as Administrator, Appellant,* v. SPOKANE, PORTLAND & SEATTLE RAILWAY COMPANY, *Respondent.*\*

\*Reported in 396 P. (2d) 158.

*Robinson, Landerholm, Memovich & Lansverk,* for appellant.

*McMullen, Snider & McMullen, Clarence R. Wicks,* and *Cleveland C. Cory,* for respondent.

HILL, J.—This is a wrongful death action brought by Glen Mulkey, as administrator of the estate of his wife, Hazel Mulkey, on behalf of himself and their three sons,[1] against the Spokane, Portland & Seattle Railway Company.

The decedent was killed when the car she was driving was hit by one of the defendant's trains at a private grade crossing with which she was completely familiar.

The jury brought in a verdict in the sum of $18,054.10 for the husband. The trial court, being of the opinion that there was no evidence of negligence on the part of the railroad and that the evidence established the decedent's own negligence as a matter of law, entered a judgment n.o.v. dismissing the action.

The trial court was also of the opinion that there had been error in certain instructions which entitled the defendant to a new trial, if the judgment n.o.v. was reversed on appeal, and so an alternative new trial was granted. The plaintiff appeals.[2]

---

[1] The sons were 31, 28, and 19 at the time of their mother's death. The two older sons were married and had families of their own; the youngest was in the Navy at the time of trial. The jury made no award of damages to any of the sons.

[2] The plaintiff also urges certain errors in instructions, which should not be repeated in the event of a new trial. In view of the disposition we make of the case, these claimed errors are not discussed.

The jury obviously concluded that there was negligence on the part of the railroad and that there was no contributory negligence on the part of the decedent.[3]

The trial court, being in disagreement with the jury's conclusions, is nonetheless bound by them, as are we, unless it can be said that there is no substantial evidence to support the verdict. *Young v. Seattle* (1962), 60 Wn. (2d) 805, 376 P. (2d) 443; *Grange v. Finlay* (1961), 58 Wn. (2d) 528, 364 P. (2d) 234; *Mason v. Turner* (1956), 48 Wn. (2d) 145, 291 P. (2d) 1023; *Wood v. Chicago, M., St. P. & Pac. R. Co.* (1954), 45 Wn. (2d) 601, 277 P. (2d) 345; *Williams v. Hofer* (1948), 30 Wn. (2d) 253, 191 P. (2d) 306.

We review the evidence with this rule in mind. Mr. and Mrs. Mulkey operated a bean farm. Between the farm and the highway runs the main line of the defendant railway company (here a single set of tracks in the center of a 100-foot right of way). About 250 yards east of where the Mulkeys' private roadway crossed the railroad, its tracks curved south. Along the stretch of track between the crossing and the curve, and on the farm side (as distinguished from the highway side), there was a bank of dirt 8 to 9 feet high on the railroad right of way. There is also evidence that this bank was overgrown with weeds, some of which were "four, four and a half feet tall."

The testimony most favorable to the plaintiff was that, standing on the tracks at the crossing, a person could not see further than 700 to 750 feet down the track to the east because of the curve and that this bank so obstructed the vision of a driver going from the farm to the highway that 30 feet from the tracks he could see only 75 to 100 feet to the east and 25 feet from the tracks he could see about 200 feet.

While there were heavy planks between the rails, the grade of the private roadway was 12 to 16 per cent, *i.e.,* a

---

[3]The jury had been instructed that the plaintiff could not recover unless the railroad company had been negligent and that there could be no recovery if Mrs. Mulkey was contributorily negligent.

4-foot rise in the last 30 to 25 feet coming up to the rails.

On this roadway, the railroad had put the same type of ballast rock which it used along its tracks. There was testimony that it was difficult for automobiles to get satisfactory traction on this type of rock and that it caused the wheels to spin; that to be sure of getting up the incline and across the tracks, without traction difficulties, it was necessary to keep moving; and very few people stopped where they could see clear to the curve in the railroad track. It was the plaintiff's theory that this ballast rock, on the sharp incline, and the obstructed view to the right constituted a trap for a driver going from the farm to the highway, unless a whistle was sounded to warn of approaching trains.

A witness testified that he had seen Mrs. Mulkey leave the farm at about 11:20 a.m., and drive toward the crossing at about 10 miles an hour, and that when she reached the start of the rise 25 to 30 feet from the track, he had looked away. He next heard a very short toot of a whistle and a thump. When he looked up, the train was going by on the crossing, and as he did not see Mrs. Mulkey's car he assumed that she had crossed safely. In fact, her car had been hit and she had been killed. This witness testified that the time sequence was such that Mrs. Mulkey could not have stopped her car and started it again between the time he last saw her and when he heard the toot and the thump.

There were only two witnesses to the collision, a fireman and a brakeman, who were riding on the left side of the lead engine. They testified that Mrs. Mulkey was traveling at an excessive rate of speed and that she did not look to the east (toward the train), but appeared to be looking straight ahead. The jury, of course, did not have to believe their testimony.

The speed of the train becomes a matter of record by reason of a speed tape system used by the railroad. One speed tape showed 52 and the other showed 48 miles an hour. Using the greater speed, this would mean that it would travel the 200 feet from which it was visible, 25 feet from the crossing, in 2.6 seconds. At 10 miles per hour,

Mrs. Mulkey would have traveled in 2.6 seconds just about 38 feet, which would cover the 25 feet to the track, and across the track, but would hardly clear her car. At any speed under 10 miles an hour, she would certainly be hit, if she tried to continue across the track. The stopping distance, at 10 miles per hour, was conceded to be 20.8 feet (this includes reaction time). If no train was in sight when she was 25 feet away from the track, would a reasonably prudent and cautious driver try to make it across, or would such a person try to stop on an incline, on which there was the ballast rock to which we have referred, at a place where it would be possible to see all the way to the curve.

If we assume that reasonable minds would all agree that a reasonably prudent and cautious driver would not proceed until he could see all the way to the curve under these circumstances, there is still another fact facet to consider. The absence of any whistled warning of the approach of a train could be a decisive factor in determining the manner of a driver's approach to the crossing. There was evidence from which the jury could find that there was no whistle sounded until just before the collision.[4] The jury could have reasoned that Mrs. Mulkey was entitled to proceed on the assumption that there was no train approaching and, on that assumption, conclude that she was not negligent in her approach of this crossing, despite the obstructed view to the east.

The negligence of the engine crew, in failing to give an adequate warning of the approach of the train, has been assumed in discussing whether Mrs. Mulkey was contributorily negligent. We now examine the evidence to support that assumption.

---

[4]There was evidence that the whistle was blown a thousand feet before the train came to the crossing, and that it was blown practically all the way to the crossing. A number of witnesses who were in a position to have heard, testified that they did not hear any whistle. There was one witness, to whose testimony we have heretofore referred, who saw Mrs. Mulkey driving towards the crossing and, after he turned away, heard a short toot immediately followed by a thump; but no whistle that would have been a warning.

■ The engine crew knew that the bean harvest was underway on the Mulkey farm and that the crossing between the farm and the highway was consequently in frequent use. They recognized that a whistle should be blown to give a warning to those using, or planning to use, that crossing and testified that it was blown at least 1,000 feet from the crossing and continuously thereafter until the engineer started the emergency stop. They were supported in their testimony, that the whistle was blown, by the head brakeman who was riding in the engine and saw the collision. The jury could conclude, from other testimony, that the whistle had not been blown and that had it been sounded, it would have been heard by Mrs. Mulkey in time to have avoided the collision. Hence, the jury might reasonably have concluded that the failure to blow the whistle constituted negligence by the railroad proximately causing her death. *Goodner v. Chicago, M., St. P. & Pac. R. Co.* (1962), 61 Wn. (2d) 12, 17, 377 P. (2d) 231; *Northern Pac. R. Co. v. Everett* (1956 C.A. 9th), 232 F. (2d) 488, 491.

The issue of negligence, so far as the railroad was concerned, presented a very clear factual issue, *i.e.,* did the engineer blow the whistle for such time and distance as to give an adequate warning of the approach of the train. If such a warning was given, the railroad was not negligent, and the case was at an end. It could also have been at end for still another reason, and that was that there was no justification for Mrs. Mulkey's failure to look from a place where she could have seen the approaching train. If such a warning was not given, the railroad was negligent; and reasonable minds could conclude that the negligence was of a character that justified Mrs. Mulkey in proceeding as she did.

■ We are satisfied that the negligence of the railroad was an issue for the jury, as was the issue of the contributory negligence of Mrs. Mulkey. We might agree with the trial court that Mrs. Mulkey was contributorily negligent, even if no whistled warning was given, but we cannot agree that, from the evidence, reasonable minds could not reach a different conclusion; and, where the minds of rea-

sonable men may differ on an issue of fact, it is for the jury, not the court, to make the determination. *Smith v. American Mail Line, Ltd.* (1961), 58 Wn. (2d) 361, 367, 363 P. (2d) 133; *Arthurs v. National Postal Transport Ass'n* (1956), 49 Wn. (2d) 570, 577, 304 P. (2d) 685; *Caylor v. B. C. Motor Transp. Ltd.* (1937), 191 Wash. 365, 372, 71 P. (2d) 162.

The trial court's alternative motion for a new trial was based on: (1) a reference in an instruction to the plaintiff's claim that the railroad failed to maintain a proper lookout; and (2) an instruction that the railroad was required, by statute, to whistle 80 rods (a quarter of a mile, or 1,320 feet) before it crossed a traveled road or street and that its failure so to do is negligence as a matter of law.

■ We can see no prejudicial error in the trial court's mentioning, in the instruction covering the allegations of the parties in their pleadings, the plaintiff's contention that the defendant was negligent in not maintaining a proper lookout. No specific instruction on "lookout" was given, and its mention as a contention of the plaintiff's must be read in connection with the statement in the same instruction: That it was merely a summary of the allegations of the parties in their pleadings, and that they (the jury) were not to take the same as any proof of the matters alleged, except as admitted in the pleadings, and were to consider only those matters alleged in the pleadings which had been established by the evidence.

The instruction relative to "whistle," which the trial court deemed erroneous, was based on our statute[5] and was:

"You are instructed that the laws of the State of Washington require every engineer driving a locomotive on any railway to ring the bell or sound the whistle upon such locomotive, or cause the same to be rung or sounded at

---

[5]"Every engineer driving a locomotive on any railway who shall fail to ring the bell or sound the whistle upon such locomotive, or cause the same to be rung or sounded at least eighty rods from any place where such railway crosses a traveled road or street on the same level (except in cities), or to continue the ringing of such bell or sounding of such whistle until such locomotive shall have crossed such road or street, shall be guilty of a misdemeanor." RCW 81.48.010

least 80 rods from any place where such railway crosses a traveled road or street on the same level (except in cities) and to continue the ringing of such bell or sounding of such whistle until such locomotive shall have crossed such road or street.

"Violation of that statutory requirement is negligence as a matter of law.

"While the violation of a positive statute is negligence, such negligence will not render a defendant liable for damages unless such violation proximately contributed to or proximately caused the accident."

█ The trial judge became convinced that the statute did not apply to private roadways, such as the one with which we are here concerned, and that it was error to charge that a violation of the statutory requirement was negligence as a matter of law.

We do not need to determine, at this time, whether all private roadways are "traveled" roads. The adequacy of the defendant's warning must be determined from the circumstances relative to this particular road at this particular time and under these particular circumstances (the road being known by the engine crew to be in use by many people engaged in harvesting the bean crop). In *Goodner v. Chicago, M., St. P. & Pac. R. Co., supra,* this court recently affirmed a jury verdict for the plaintiff in spite of a contention by the defendant railroad that it had satisfied its statutory duty by blowing its whistle or ringing its bell. In that case, we stated that the warning in all railroad crossing cases should be adequate for the circumstances.

The circumstances, relative to this crossing, made it negligence, as a matter of law, for the engine crew to fail to give timely notice of the approach of the train by a whistled warning, whether or not the statute was applicable. As we have pointed out, the engine crew recognized the necessity of a warning and testified that the whistle was blown, and continuously, for at least a thousand feet. We cannot believe that the jury was splitting hairs and based its finding of the railroad's negligence on the failure to sound the whistle from a point 1,320 feet from the crossing, even

though it sounded it for the last 1,000 feet. The instruction was not prejudicial.

We hold that the issues of the negligence of the railroad and the contributory negligence of the decedent, Mrs. Mulkey, were properly submitted to the jury; and the judgment n.o.v., directing dismissal of the action, should not have been granted.

We hold that the two instructions relative to "lookout" and "whistle," which the trial judge gave as the grounds for a new trial, did not, under the circumstances, constitute prejudicial error and that a new trial should not have been granted.

It is directed that the verdict be reinstated and a judgment entered thereon.

Finley, Rosellini, Hunter, Hamilton, and Hale, JJ., concur.

Ott, C. J. (dissenting)—The trial judge granted a new trial for the reason that he had erroneously instructed the jury that the respondent company had a *statutory* duty "to ring the bell or sound the whistle" at a railroad crossing used exclusively as *a private easement for the convenience of the adjacent farm operation.* The majority hold that such a *statutory* duty exists. I do not agree.

RCW 81.48.010 provides:

"Every engineer driving a locomotive on any railway who shall fail to ring the bell or sound the whistle upon such locomotive, or cause the same to be rung or sounded at least eighty rods from any place where such railway crosses *a traveled road* or street on the same level (except in cities), or to continue the ringing of such bell or sounding of such whistle until such locomotive shall have crossed such road or street, shall be guilty of a misdemeanor." (Italics mine.)

This court has never defined the meaning or scope of the words "traveled road" or had occasion to interpret the intent of the legislature in this regard. The cited statute was enacted by the legislature in 1909, and re-enacted in 1961. It was taken nearly verbatim from a Minnesota law. In *Czech v. Great Northern Ry. Co.,* 68 Minn. 38, 41, 70 N. W. 791 (1897), the Supreme Court of Minnesota, in

holding that the words "traveled road" did not include a private roadway, said:

". . . We agree with counsel for the defendant that the statute requiring a bell to be rung or a whistle to be sounded at least 80 rods from the place where a railway crosses a 'traveled road or street' on the same level does not apply to private farm crossings. It only applies to public roads; that is, roads traveled by the public. A mere farm crossing, designed exclusively for the convenience of the adjacent landowner, is never spoken of, either in the statutes or in common speech, as a 'road.' Probably the object in using the term 'traveled road,' instead of 'highway' or 'public highway,' was to include roads actually used and traveled as public highways, without regard to whether they have been legally laid out or dedicated as such."

This interpretation of the Minnesota statute by the Supreme Court of Minnesota was announced prior to our 1909 legislative session. In *Jackson v. Colagrossi,* 50 Wn. (2d) 572, 575, 313 P. (2d) 697 (1957), the late Judge Foster, speaking for the court, said:

". . . By an unbroken line of decisions only recently reaffirmed, this court is committed to the prevailing rule of construction that the adoption of a statute of another state likewise carries with it the construction placed upon such statute by the courts of that state. . . ."

It seems evident to me that the legislature of this state intended "a traveled road" to mean one over which the public has a right to travel, whether such right was acquired by prescription or otherwise. I do not believe that, by the enactment of RCW 81.48.010, *supra,* the legislature intended that an engineer should be required to ring a bell or sound a whistle "at least eighty rods" from where the railway crosses each one of the thousands of private roadway easements across railroad rights of way in this state. Had the legislature intended the words "traveled road" to encompass *private easements,* it would have included those descriptive words in the statute.

The jury, upon retrial, might find that the railway company, in the proper exercise of due care, had a duty to

"ring the bell or sound the whistle." However, in my opinion, there is no *statutory* duty to do so.

For the reasons stated, the order granting a new trial should be affirmed.

DONWORTH and WEAVER, JJ., concur with OTT, C. J.