1 Wn. App. 534 (1969)
462 P.2d 966
JAMES EARL OSBORN, Respondent,
v.
LAKE WASHINGTON SCHOOL DISTRICT NO. 414, Appellant.
No. 40-40268-1.
The Court of Appeals of Washington, Division One, Panel 2.
December 22, 1969.
Martin, Shorts & Vever and Edward C. Burch, for appellant.
Horswill, Keller, Rohrback, Waldo & Moran and Dwayne A. Richards, for respondent.
STAFFORD, J.
James Osborn, a student, sought recovery for injuries he sustained in the school's supply room. He was granted a new trial for misconduct of counsel. Defense counsel did not argue the case on appeal.
*535 The defendant school district assigns error to the trial court's failure to direct a defense verdict. It is urged plaintiff failed to establish defendant's negligence and that plaintiff was contributively negligent as a matter of law. We do not agree.
[1] No discretion is involved in ruling on a motion for a directed verdict. The trial court, and this court on appeal, must interpret the evidence most strongly against defendant and most favorably for plaintiff, and draw every reasonable inference therefrom in favor of plaintiff. Leach v. Ellensburg Hosp. Ass'n, 65 Wn.2d 925, 400 P.2d 611 (1965); Benton v. Farwest Cab Co., 63 Wn.2d 859, 389 P.2d 418 (1964); Wold v. Jones, 60 Wn.2d 327, 373 P.2d 805 (1962); Parrish v. Ash, 32 Wn.2d 637, 203 P.2d 330 (1949). In light of this test, there was substantial evidence from which the jury could have found the following facts.
On the day of the injury, plaintiff's teacher, Mrs. Davenport, took the boys in her class to the lunchroom (a combined lunchroom, auditorium and overflow classroom used by the student body two or three times a day). Located in the middle of the area was a narrow rectangular storeroom with a door that opened directly into the lunchroom. Although a key was available, the door was never locked. The storeroom was lighted by a single bulb located at the far end, operated by a string that hung from the fixture.
The storeroom contained electric stoves, sewing machines, phonographs, chairs, boxes of books, a piano and a cart, as well as general cleaning and school supplies. It also housed a 500-pound voting machine that was narrow in depth, 5 feet long and 3 feet wide. The machine had been stored along one wall near the door, on a low concrete ledge approximately 1 foot wide. It was supported on two short two-by-four wood blocks. There was no testimony whether the voting machine as stored, or the ledge on which it sat, was level.
No effort had been made to fasten the machine to the wall to prevent tipping. Its security had not been checked since it had been placed on the ledge approximately a year *536 before. Its position on the date of the accident was unknown.
Neither plaintiff nor the general student body had been instructed that the storeroom was "off limits." Although other students frequented the room for supplies and equipment, there is evidence to support plaintiff's assertion that he had not previously entered the room.
The plaintiff and several others reached the lunchroom and entered the storeroom. Upon Mrs. Davenport's arrival they were asked to remove themselves and complied.
Mrs. Davenport was expected to supervise the boys until relieved by another teacher. School policy required such supervision because of the district's conceded responsibility for the students and their physical safety. In explanation of the rule, the vice-principal explained that "kids are going to be kids" if teachers are not present.
Nevertheless, Mrs. Davenport left the lunchroom unsupervised for a short period of time. In her absence the boys began to talk and run around; general disorderliness quickly developed. During the state of disorder, plaintiff and three companions re-entered the storeroom. Once inside, some other boys closed the door and refused to let them out. The boys in the storeroom could not find the light. They yelled and pounded on the door for as long as 3 minutes, asking to be released.
There is no evidence that the boys were "roughhousing" in the storeroom. During the confusion, however, the voting machine fell on plaintiff, fracturing his leg. No one knows what caused the machine to tip over.
[2] Instruction No. 3 defined "negligence."[1] Instruction No. 4 prescribed defendant's duty in the supervision of *537 students and storing of the voting machine.[2] Since no exception was taken to these instructions, they became the law of the case. Brown v. Quick Mix Co., 75 Wn.2d 833, 454 P.2d 205 (1969); Whipple v. Lambert, 73 Wn.2d 952, 442 P.2d 266 (1968). Whether defendant complied with the duty imposed by instruction No. 4 is a question on which reasonable minds could differ. Thus, it was a question for the jury. Mulkey v. Spokane, P. & S. Ry., 65 Wn.2d 116, 396 P.2d 158 (1964).
The defendant also failed to except to instruction No. 5 which provided that the contributory negligence of a 15-year-old boy must be measured against conduct which would be expected of a reasonably careful and prudent child of the same age, intelligence, maturity, training and experience. This became the law of the case. Brown v. Quick Mix Co., supra; Whipple v. Lambert, supra. Whether plaintiff's actions met the test was a question for the jury. Mulkey v. Spokane, P. & S. Ry., supra.
Defense counsel took a pretrial deposition that disclosed plaintiff had skipped school, run away from home, committed acts of vandalism as well as stealing and breaking and entering. He had been detained by the juvenile court and eventually committed to the Griffin Home for Boys as an incorrigible child.
Defendant contends the trial court's refusal to admit this in evidence was error. It is argued that it is proper to show a continuing habit of delinquent acts to establish contributory negligence when there are no independent eyewitnesses and when the incident is caused by a delinquent act. To state the proposition is to refute it. First, there were eyewitnesses (despite their unsatisfactory testimony). Second, *538 there is no evidence that plaintiff caused the machine to fall or that it was caused by any delinquent act.[3]
[3] Finally, plaintiff's past acts of misconduct are not relevant. His character is not in issue. Evidence of acts or reputation to show the trait of carefulness or carelessness in doing acts is inadmissible in negligence cases. 5 Meisenholder, Wash. Prac. § 3 (1965).
Plaintiff's attorney anticipated that defense counsel might attempt to use the foregoing information during the trial. It was evident no objection, no motion to strike and no instruction to disregard it could cure the prejudicial damage that would be caused by such a disclosure. Thus, prior to trial, plaintiff moved to exclude all such evidence. The trial court ordered the defendant to refrain from inquiring into, or making any reference to such matters during trial because "the introduction of any such evidence would be to purposely prejudice the jury and would in no way relate to the issues involved in the case;"
Despite the pretrial hearing and the clearly expressed order, defense counsel cross-examined plaintiff and deliberately elicited the fact that he was not living at home with his parents, but was instead living at the Griffin Home for Boys in Renton, Washington. Defense counsel knew in advance what the answers required by his questions would be. He had taken plaintiff's deposition.
Defense counsel argues plaintiff failed to ask that the jury be instructed to disregard the elicited answers, that plaintiff asked for no corrective instruction and failed to ask for a mistrial. He quotes the often-cited rule that one may not gamble on a verdict and later raise the issue for the first time on appeal.
His argument misses the point. Plaintiff did not remain silent or gamble on a verdict. Prior to trial he sought to *539 prevent the very damage caused by defense counsel. At that time, both court and counsel recognized prejudice could be caused by the mere asking of the question or even an objection thereto. Even when defense counsel openly violated the trial court's order, plaintiff attempted to indicate that counsel had exceeded the limits of authorized examination. It was difficult to do more without compounding the prejudice.
[4] As indicated in Warren v. Hart, 71 Wn.2d 512, 429 P.2d 873 (1967), failure to make a proper objection may be a waiver, except "where the misconduct is so flagrant and prejudicial that no instruction to disregard it would have cured it." Plaintiff had little choice in the problem forced upon him by the deliberate action of defense counsel. Even a motion for mistrial would have benefited the defendant. We feel the principle of Warren v. Hart, supra, is directly in point. It is meant to be used as a shield, not as a sword.
The actual conditions surrounding the trial can be gauged best by comments of the trial judge, made during the motion for new trial. Nothing will be gained by setting them out at length. It is sufficient to say that the trial judge was shocked by an obvious violation of a pretrial order designed to prevent the very problem caused by defense counsel.
[5] An order granting a new trial will not be reversed, except for an abuse of discretion. Olpinski v. Clement, 73 Wn.2d 944, 442 P.2d 260 (1968). No abuse of discretion was involved in the trial court's ruling.
The order granting the new trial is affirmed.
HOROWITZ, A.C.J., and UTTER, J., concur.
NOTES
[1] Instruction No. 3: "`Negligence' is the failure to exercise reasonable and ordinary care. By the term `reasonable and ordinary care' is meant that degree of care and foresight which an ordinarily careful and prudent person would exercise under the same or similar circumstances or conditions.... By the term `foresight' is meant the obligation to recognize that the event which did occur was one which might reasonably have been anticipated."
[2] Instruction No. 4: "[U]nder the circumstances of this case, the law required the defendant to exercise reasonable and ordinary care in the manner in which it stored the voting machine which was the instrument of plaintiff's injury and further that the law required the defendant to use reasonable and ordinary care in the supervising and controlling the activities of students, including plaintiff, ... A failure to exercise such reasonable and ordinary care in either circumstance would constitute negligence ..."
[3] RCW 13.04.010 defines a delinquent child as: "any child under the age of eighteen years who violates any law of this state, or any ordinance of any town, city, or county of this state defining a crime or who has violated any federal law or law of another state defining a crime, and whose case has been referred to the juvenile court by any jurisdiction whatsoever."