[No. 2428-2.   Division Two.   February 22, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. RUSSELL GRANT NEUKOM, *Appellant*.

*Ken Williams,* for appellant (appointed counsel for appeal).

*Craig A. Ritchie, Prosecuting Attorney,* for respondent.

REED, J.—The defendant, Russell Grant Neukom, was convicted of grand larceny on May 4, 1976. The evidence against him indicated that he forged a check for $354, naming one Lyle H. Stumbaugh as payee. The check had been drawn on the Alderwood Branch of the Old National Bank of Washington in Lynnwood, Washington, against the account of Harvey's Arco. Neukom then deposited the forged check with the Sequim Branch of the Peoples National Bank of Washington, to the account of the payee, signing Stumbaugh's name to the deposit slip to receive $304 cash in return. The check was subsequently returned to the Sequim bank, marked "Account closed." On that same day, the Sequim bank manager received a bulletin from the Washington Banker's Association, warning of a major criminal operation by which checks drawn upon Harvey's Arco and other named establishments were being forged throughout the state, and stating that over $30,000 had already been lost by various banks. The bulletin did not mention defendant in connection with the statewide operation in any way, nor did the State seek to prove such connection.

Prior to trial, Neukom's attorney made a motion in limine, in which, *inter alia,* he requested the trial court to exclude any evidence or mention of the fact "that the method of criminal operation in this case resembles that of a major criminal operation in this and adjoining states."

The prosecution conceded that whether Neukom's method of operation resembled that of a large criminal operation was not relevant, and stated, "we don't intend to bring in testimony that it's a major operation." The trial judge granted the motion, stating:

I would agree that [the State] will have to explain the operation, but not that this is necessarily any kind of a major operation in any other community or state.

During the prosecutor's direct examination of the bank manager, the following testimony occurred:

Q  What did you do?
A  Well, the first thing I did was to call our claims department and tell them of my problem.
Q  Okay, had you received in the meantime—had you received any notice independently of your investigation regarding this particular check?
A  When I opened my mail that morning, coincidentally was a W.B.A.—Washington Banker's Association bulletin warning of ·a check operation wherein checks drawn in the name of Harvey's Arco—Lynn Chevron and another outfit were being passed all over the state, and that there had been at that time upwards of $30,000 in losses suffered by different banks.
Q  Okay, on this particular question—
       MR. GREENAWAY: Your Honor, may I make a motion? I would like to speak to the court at the side bench. (Sidebar conference out of the hearing of the Reporter and Jury.)

The examination resumed on another topic, with no objection, motion, or ruling having been made of record.

The defendant has assigned error to this testimony, arguing that the evidence of unrelated crimes concerning Harvey's Arco was not relevant and was so prejudicial as to deny him a fair and impartial trial. The State contends that the defendant's failure to object at the time the testimony was given now precludes consideration of this alleged error on appeal. The State also asserts that even if there was error in admitting the testimony, it was harmless, as there was other overwhelming evidence of the defendant's guilt.

■ Assuming the testimony elicited was precisely that which was intended to be excluded by the trial court,[1] we are convinced the State was not deliberately attempting to elicit such testimony but was seeking to establish only that the check in question had been dishonored. The testimony was at most a nonresponsive answer of the witness and not the result of flagrant prosecutorial misconduct aimed at avoiding the constraints of the court's pretrial order or at prejudicing defendant in the eyes of the jury. *Cf. Osborn v. Lake Washington School Dist. 414,* 1 Wn. App. 534, 462 P.2d 966 (1969). In this case any prejudicial effect could easily have been corrected by a timely motion to strike the answer and/or by requesting an appropriately worded instruction to the jury. *Cf. Osborn v. Lake Washington School Dist. 414, supra.* In these circumstances we believe defendant was not justified in relying upon the pretrial ruling to obviate the need for further objections as was the case in *State v. Smith,* 189 Wash. 422, 65 P.2d 1075 (1937). *See also Fenimore v. Donald M. Drake Constr. Co.,* 87 Wn.2d 85, 91, 549 P.2d 483 (1976). Rather, defendant had a duty in these circumstances to attempt to correct the error and render it all the more harmless. He did not do so either by a motion to strike, a request for a curative instruction, a motion for a mistrial, or by requesting a new trial. Not having done any of these things, it appears to us he chose to "gamble on a verdict." *Osborn v. Lake Washington School Dist. 414, supra* at 538.

■ In any event there was no further reference to the matter and the evidence of defendant's guilt was so strong we hold the error in no way affected the final outcome of the case and was therefore harmless. *State v. Queen,* 73 Wn.2d 706, 440 P.2d 461 (1968); *State v. Britton,* 27 Wn.2d 336, 341, 178 P.2d 341 (1947). In addition to evidence of

---

[1]As noted, defendant was not mentioned; it appears the witness innocently volunteered the statement to explain his increasing suspicions about the check. The evidence, *if otherwise relevant,* would not have been admitted for the truth of its content; when so restricted (by instruction) it would not be hearsay as the State suggests.

how this scheme was pursued by defendant, he was positively identified from photo displays and in open court by both the manager and teller as the person passing the forged check in question and receiving the cash. Defendant did not testify, his defense consisting simply of recalling two of the State's witnesses as to identity of the culprit in an unsuccessful attempt to shake their stories. Even without the unfortunate response of the bank manager, the jury could hardly come to any other conclusion on the record we have examined.

Judgment affirmed.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied March 23, 1977.