[No. 7993–7–III.   Division Three.   October 15, 1987.]

DONALD E. BREIT, *Appellant,* v. ST. LUKE'S MEMORIAL HOSPITAL, *Respondent.*

*Dennis W. Morgan* and *Cross & Morgan,* for appellant.

*William W. Goss* and *Turner, Stoeve, Gagliardi & Goss,* for respondent.

462

GREEN, J.—Donald E. Breit appeals a summary judgment dismissing his malpractice action against St. Luke's Memorial Hospital. We reverse.

On January 5, 1982, a laminectomy was performed on Mr. Breit at St. Luke's Hospital. The next morning he was ambulatory and had full use of his extremities though he was experiencing considerable pain. Because of the pain, Nurse Morris, following the orders of Dr. MacKay, gave Mr. Breit an intramuscular injection of 10 milligrams of morphine sulfate. Mr. Breit was then assisted from his bed to a chair in the hospital room. About 11 a.m. Dr. MacKay visited Mr. Breit, who still complained of pain. Dr. MacKay ordered he be given an additional 5 milligrams of morphine sulfate. While either standing or seated, Nurse Morris administered the ordered injection. Shortly thereafter he suffered a loss of sensory and motor functions. Mr. Breit remains paralyzed and resides in a convalescent center.

On January 4, 1985, he brought this action for damages against St. Luke's Memorial Hospital and Drs. Fischer and MacKay, his physicians. Drs. Fischer and MacKay were voluntarily dismissed. Thereafter, St. Luke's motion for summary judgment was granted. Mr. Breit filed a notice of appeal.

Summary judgment is appropriate if the pleadings, depositions and admissions on file together with the affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 882, 719 P.2d 120 (1986). An appellate court reviewing an order of summary judgment places itself in the position of the trial court and considers the facts in a light most favorable to the nonmoving party. *Del Guzzi,* at 882. The burden is on the moving party to prove no genuine issue of fact exists which could influence the outcome at trial. *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). Generally, questions of fact are for the jury; however, when reasonable minds could reach but one conclusion, questions of fact may be determined by the court as a

matter of law. *Hartley,* at 775.

Here, the trial court considered numerous affidavits and depositions, including the affidavit of James O'Donnell, a pharmacologist, and two nurses, Margaret F. Fay and Heather Oesting. The affidavits of these nurses offer the opinion that Mr. Breit's attending nurse breached the standard of care for nurses. Ms. Oesting's affidavit states:

> It is my opinion, based upon a reasonable certainty concerning the standard of nursing care in the State of Washington, that a violation of that standard of care occurred in the following instances:
>
> . . .
>
> 4. The administration of the 5 milligrams of morphine sulphate at 1100 hours on January 6, 1982, while the patient was in an upright position, constitutes poor nursing practice due to the *risk of inducing hypotension,* dizziness, and/or drowsiness.

(Italics ours.) In her deposition, she stated that hypotension, *i.e.,* blood pooling in the extremities, is a risk or side effect of an injection of morphine sulfate.

Dr. MacKay, the treating physician at the time of the incident, considered the possibility, "the MS [morphine sulfate] might have caused a pooling of blood in the lower extremities and a sufficient hypotension to render him unconscious or give him a stroke." He also indicated in his notes at that time "the MS was given to patient upright in a chair. Will watch closely." The nurse who gave the injection, Leslie Morris, stated in her deposition she was aware of risks with regard to morphine sulfate as "[h]ypotension or hypertension, decreased respirations, drowsiness, some dizziness", as did Vaundalea Froelich, the charge nurse.

Finally, James O'Donnell, who has a doctorate in pharmacy, stated in his affidavit:

> Administration of morphine sulfate to a patient who is in an upright position will result in an orthostatic hypotension leading to a vascular dilatation and pooling of blood.
>
> The potential risks involved in connection with the administration of morphine sulfate to a patient in an upright position include: the flow of blood and oxygen to

vital organs is reduced . . . leading to ischemia and cell damage. This gives rise to a spectrum of change ranging from lesions confined to the "watersheds" (arterial boundary zones) of the cerebrum and cerebellum to purely diffuse obstruction of neurons throughout.

*The likelihood of an adverse reaction to a morphine sulfate injection is increased if the patient is in an upright as opposed to a supine (prone) position.*

The paralysis suffered by Donald E. Breit can be attributed to a classic vascular insufficiency reaction to a morphine injection.

(Italics ours.)

St. Luke's contends Mr. O'Donnell's affidavit should not have been considered because he was not competent to testify, he did not testify as to the standard of care in Washington, he is not a nurse, nor is he familiar with the standard of care for nurses in Washington, and his affidavit did not meet the requirement of reasonable medical certainty in rendering an opinion. We disagree.

■ The general rule is that expert testimony is required when an essential element in the case is best established by an opinion which is beyond the expertise of a lay person. *Harris v. Groth,* 99 Wn.2d 438, 449, 663 P.2d 113 (1983); 5A K. Tegland, Wash. Prac., *Evidence* § 300, at 60 (2d ed. 1982). Medical facts must be proven by expert testimony unless they are "'observable by [a layperson's] senses and describable without medical training'", *Harris v. Groth, supra* at 449 (quoting *Bennett v. Department of Labor & Indus.,* 95 Wn.2d 531, 533, 627 P.2d 104 (1981)), or if the practice of the professional is such a gross deviation from ordinary care, a lay person could easily recognize it. *Petersen v. State,* 100 Wn.2d 421, 437, 671 P.2d 230 (1983). Expert testimony is usually necessary to establish the standard of care and most aspects of causation. *Harris v. Groth, supra* at 449.

However, the modern trend in the law is not to impose per se limitations on the testimony of otherwise qualified nonphysicians, *i.e.,* less reliance on formal titles and degrees. *Harris v. Groth, supra* at 449. "The witness need

not possess the academic credentials of an expert; practical experience may suffice. Training in a related field or academic background alone may also be sufficient." (Footnotes omitted.) 5A K. Tegland § 289. "[M]edicine is an inexact science where the desired results cannot be guaranteed, and where professional judgment may reasonably differ as to what constitutes proper treatment." (Italics omitted.) *Watson v. Hockett,* 107 Wn.2d 158, 167, 727 P.2d 669 (1986) (quoting J. Perdue, *Texas Medical Malpractice,* ch. 2, "Standard of Care", 22 Hous. L. Rev. 47, 60 (1985)). Also, "'the line between chemistry, biology, and medicine is too indefinite to admit of a practicable separation of topics and witnesses'". *Harris v. Groth, supra* at 450 (quoting 2 J. Wigmore, *Evidence* § 569, at 790 (rev. 1979)). Thus, whether an expert is licensed to practice medicine is an important, but not dispositive, factor to be considered when the court makes its determination as to whether an expert is qualified. *Harris v. Groth, supra* at 450–51. The trial court retains broad discretion in determining whether an expert is qualified and its decision will be reversed only for a manifest abuse. *Harris v. Groth, supra* at 450.

Here, James O'Donnell's affidavit was introduced not to establish the standard of care for nurses in the state of Washington, but rather to show the possible adverse reaction to a morphine sulfate injection while a patient is in an upright position. For that purpose, a pharmacologist's description of the use of the drugs he dispenses was appropriate and properly considered.

The evidence in affidavits presented by Mr. Breit, the nonmoving party, considered in a light most favorable to him, indicates a question of material fact exists as to whether the nurse breached the duty of care in administering the morphine sulfate injection to Mr. Breit while he was in an upright position. The affidavit and depositions establish such an injection given in that manner has the potential of causing hypotension or pooling of the blood in the patient's extremities which in turn could cause a spinal cord stroke and paralysis. The affidavits indicate this fact

was known to the nursing profession and was a breach of the "standard of care" and a "poor nursing practice."
Reversed and remanded for trial.

McINTURFF, C.J., and MUNSON, J., concur.