[No. 55419–6.   En Banc.   June 22, 1989.]

MONTE S. McLAUGHLIN, *Petitioner,* v. THOMAS R. COOKE, ET AL, *Respondents.*

*Goodwin, Grutz & Scott,* by *James A. Grutz,* for petitioner.

*Bruce E. Larson* and *Philip A. Talmadge* (of *Karr, Tuttle, Campbell*), for respondents.

SMITH, J.—Monte S. McLaughlin sought review of an unpublished decision of the Court of Appeals, Division Two, reversing a $160,000 judgment he obtained against Thomas R. Cooke, D.O., for medical malpractice incident to a vasectomy. The Court of Appeals reversed and remanded for new trial, holding that it was prejudicial error to give a jury instruction summarizing plaintiff's four claims, two of which were not supported by substantial evidence.

We reverse the Court of Appeals and reinstate the jury verdict in favor of Petitioner McLaughlin.

Two issues are presented by this case. They are:

(1) Whether the trial court committed reversible error in giving a jury instruction summarizing plaintiff's claims

where two of the claims may have been unsupported by the evidence and where another instruction, immediately following, stated that the previous jury instruction was merely a summary of the claims of the plaintiff and not proof of the matters stated; and

(2) Whether there was sufficient expert testimony in this case upon which a jury could determine that the physician had breached the requisite standard of care by removing venous material instead of the vas deferens during a vasectomy and that the physician's actions were the proximate cause of the ensuing injuries to the plaintiff.

Petitioner Monte S. McLaughlin contends the Court of Appeals was in error in overturning the jury verdict in his favor. He cites cases holding that a jury instruction which merely summarizes the plaintiff's claims is not prejudicial where the jury is instructed to consider only those claims supported by the evidence. He also contends that, contrary to the conclusion of the Court of Appeals, there was substantial evidence in the trial record and within the understanding of the jury that Dr. Thomas R. Cooke breached the applicable medical standard of care for vasectomies, and that Dr. Cooke's negligence in performing the vasectomy proximately caused excessive bleeding which led to complications resulting in removal of petitioner's right testicle.

Respondent Dr. Thomas R. Cooke contends that petitioner's lack of expert testimony on the issues of standard of care and proximate cause made instruction 7, summarizing plaintiff's claims, prejudicial to Dr. Cooke. He also contends that the trial court's instruction 11 and the trial court's refusal to give his proposed instruction 12 compel reversal of the trial court judgment.

On March 26, 1982, Thomas R. Cooke, D.O., performed a vasectomy on Monte S. McLaughlin. At the outset of the surgical procedure, Mr. McLaughlin began to bleed abnormally. Dr. Cooke attempted to control the bleeding by cauterizing and suturing the bleeding vessels that he could identify. However, the bleeding did not completely subside.

Dr. Cooke then performed the vasectomy on the left side without incident and returned to the right side in an attempt to conclude the procedure. The bleeding continued and increased, causing swelling and, to some degree, obscuring vision in the surgical area. Dr. Cooke continued his attempt to control the bleeding. He identified what he believed to be the vas deferens, cut a portion of it out, and concluded the surgery.

A subsequent pathology report revealed that Dr. Cooke had excised a portion of the *venous plexus,* a blood vessel in the scrotum, instead of the vas deferens. Dr. Cooke based his belief that the structure he was cutting was the vas deferens upon touch, rather than visual identification. He testified that the structure was taut, hard, and tubular—characteristics of the vas deferens.

After surgery, the bleeding still could not be stabilized even though all identifiable bleeding vessels had been sealed off. Dr. Cooke transported Mr. McLaughlin to St. Helen's Hospital in Dr. Cooke's own vehicle and immediately obtained a consultation from Robert J. Berecz, M.D., a general and vascular surgeon. Dr. Berecz conducted a blood study that suggested Mr. McLaughlin's coagulation ability was within normal limits. However, Mr. McLaughlin's mother reported to Dr. Cooke shortly after surgery that her son had a history of bleeding difficulty. Based on this information, to avoid the risk of aggravating the bleeding, Dr. Cooke and Dr. Berecz determined it was inadvisable to remove the hematoma that had formed in Mr. McLaughlin's swollen scrotum. Dr. Cooke thus instead prescribed antibiotics, vitamin K, bed rest and ice on the scrotum.

Petitioner McLaughlin remained in the hospital for two additional days and was released. Dr. Cooke prescribed similar treatment to be performed at petitioner's home. He communicated with Mrs. Krisann Katheryn McLaughlin (petitioner's wife) and visited the McLaughlin home on at least two occasions in the following days because of Mr. McLaughlin's lack of satisfactory progress toward recovery.

On April 19, 1982, 24 days after the operation, Dr. Cooke examined Mr. McLaughlin in Dr. Cooke's office and prescribed continued medication, vitamin K, bed rest and ice on the scrotum.

The next day, Mr. McLaughlin experienced increased pain and fresh bleeding. After further examination, Dr. Cooke referred him to a urologist the same day. The urologist immediately sent him to University Hospital for further examination and treatment.

At University Hospital, Michael E. Mayo, M.D., another urologist, obtained hematological consultation and concluded that Mr. McLaughlin had no bleeding disorder. Mr. McLaughlin's hematoma was then surgically removed. A significant amount of necrotic tissue was observed and removed, indicating deterioration due to lack of blood circulation in the scrotum. Mr. McLaughlin's right testicle had become infected and eventually required removal.

Petitioner McLaughlin continued to bleed excessively at University Hospital, following surgical removal of the hematoma. Additional tests ultimately revealed he had a rare blood disorder known as factor VIII deficiency, a mild form of hemophilia. He was subsequently treated for this.

Petitioner McLaughlin brought suit against Dr. Cooke for professional negligence on July 8, 1982. The jury returned a verdict in favor of the plaintiff (Petitioner McLaughlin) in the amount of $160,000.

The Court of Appeals reversed and remanded the case for a new trial, holding that "jury instructions can encompass only those theories of liability which are supported by substantial evidence." Specifically, the Court of Appeals determined that contentions (1) and (2) of instruction 7 constituted reversible error. The instruction, in its entirety, reads:

> The plaintiff claims that the defendant was negligent in one or more of the following respects:
> (1) In failing to see and identify the *vas deferens* adequately to allow a proper vasectomy surgery.

(2) In cutting out a portion of vein rather than the *vas deferens* while attempting a vasectomy procedure upon the plaintiff.

(3) In failing to adequately and timely treat the swelling in plaintiff's scrotal sac.

(4) In failing to make a timely referral to another physician for treatment of plaintiff's swollen scrotal sac.

The plaintiff claims that one or more of these failures on the part of the defendant was a proximate cause of plaintiff's loss of his testicle. The defendant denies these claims.

Instruction 8 (WPI 20.05) provided:

The foregoing is merely a summary of the claims of the parties. You are not to take the same as proof of the matters claimed; and you are to consider only those matters which are established by the evidence. These claims have been outlined solely to aid you in understanding the issues.

### JURY INSTRUCTIONS SUMMARIZING CLAIMS OF THE PARTIES

■ This court has held that an instruction summarizing contentions of the parties is not reversible error when it is followed by cautionary language which explains to the jury proper use of the instruction for clarification of plaintiff's contentions, despite the possibility that there may be no evidence to support particular contentions. *Ketchum v. Wood*, 73 Wn.2d 335, 438 P.2d 596 (1968); *Mulkey v. Spokane, P. & S. Ry.*, 65 Wn.2d 116, 122, 396 P.2d 158 (1964).

The Court of Appeals in this case cited neither *Ketchum* nor *Mulkey*, but relied instead on *Young v. Group Health Coop.*, 85 Wn.2d 332, 534 P.2d 1349 (1975) and *Chase v. Knabel*, 46 Wash. 484, 90 P. 642 (1907). However, neither of those cases involved a challenge to instructions summarizing the parties' claims.

This court in *Young* discussed a proximate cause instruction, an evidentiary question, and the wording of the verdict form. *Young*, 85 Wn.2d at 336–40. The court incidentally stated that verdict forms, like jury instructions,

can encompass only those theories of liability supported by substantial evidence. *Young,* 85 Wn.2d at 339.

In *Chase,* the plaintiff sued the defendant restaurant for assault and race discrimination. The jury returned a general verdict in favor of the plaintiff. The issue on appeal was whether there was sufficient evidence to submit the race discrimination claim to the jury. This court found insufficient evidence on that issue, and reversed the jury's verdict because it was not possible to determine whether the jurors had relied on the improper theory. *Chase,* 46 Wash. at 488. Unlike Dr. Cooke's challenge to instruction 7, the defendant's challenge in *Chase* was not to instructions which simply summarized various theories under which the defendant was alleged to have been negligent. The challenge was instead to the "elements" instruction which defined a separate legal claim for the jury. This court recognized that distinction in *Mulkey* by noting that the trial court gave "no specific instruction" on the plaintiff's unsupported "lookout" theory, but merely mentioned the theory as one of the plaintiff's claims. *Mulkey,* 65 Wn.2d at 122.

Similarly, in this case the trial court did not give separate instructions on each of the "claims" described in instruction 7. The court simply defined for the jury, in general terms, the legal elements of a medical malpractice claim. Moreover, instruction 8 (WPI 20.05) unequivocally pointed out that the "foregoing" (instruction 7) was merely a summary of the claims of the parties, was not evidence, and was not to be considered unless established by the evidence. Instruction 7 clearly stated that "plaintiff claims that the defendant was negligent" and that "defendant denies these claims."

The cases cited by Respondent Cooke do not support the Court of Appeals decision. Those cases involved error in a trial court's failure to instruct where particular claims were supported by the evidence. The cases hold that a plaintiff is entitled to have the jury instructed only on claims or theories supported by substantial evidence. *See Dabroe v.*

*Rhodes Co.,* 64 Wn.2d 431, 392 P.2d 317 (1964); *Woods v. Goodson,* 55 Wn.2d 687, 349 P.2d 731 (1960); *Pearce v. Motel 6, Inc.,* 28 Wn. App. 474, 624 P.2d 215, *review denied,* 95 Wn.2d 1024 (1981).

The issue here is not whether petitioner was "entitled" to any particular instruction, but whether respondent was prejudiced by the summary of contentions instruction. *Mulkey* and *Ketchum* hold that no prejudice occurs with such a clearly identified summary instruction with the addition of cautionary language such as that in instruction 8.

The issues in this case are substantially similar to those in *Mulkey* and *Ketchum.* The Court of Appeals decision in this case is in error to the extent that it held instruction 7 to be prejudicial because some of the claims listed were not supported by the evidence.

### THE NECESSITY FOR EXPERT TESTIMONY

Expert testimony is necessary to prove whether a particular practice is reasonably prudent under the applicable standard of care. *Harris v. Groth,* 99 Wn.2d 438, 449, 663 P.2d 113 (1983). Usually, the standard of care must be established by expert testimony. *Harris,* 99 Wn.2d at 449. *See also Petersen v. State,* 100 Wn.2d 421, 437, 671 P.2d 230 (1983); *Breit v. St. Luke's Mem. Hosp.,* 49 Wn. App. 461, 464, 743 P.2d 1254 (1987); *Noel v. King Cy.,* 48 Wn. App. 227, 231, 738 P.2d 692 (1987); *Miller v. Peterson,* 42 Wn. App. 822, 830, 714 P.2d 695, *review denied,* 106 Wn.2d 1006 (1986). In addition, medical expert testimony must be based upon "a reasonable degree of medical certainty." *See, e.g., State v. Crenshaw,* 98 Wn.2d 789, 802 n.2, 659 P.2d 488 (1983); *O'Donoghue v. Riggs,* 73 Wn.2d 814, 821, 823, 440 P.2d 823 (1968); *State v. Thamert,* 45 Wn. App. 143,

147, 723 P.2d 1204, *review denied,* 107 Wn.2d 1014 (1986). *See also Evans v. Lewis,* 855 F.2d 631, 637 (9th Cir. 1988); *Miller v. Bowen,* 789 F.2d 678, 681 (9th Cir. 1986).

As a general rule, expert medical testimony on the issue of proximate cause is also required in medical malpractice cases. *O'Donoghue v. Riggs,* 73 Wn.2d at 824. *See also Herskovits v. Group Health Coop.,* 99 Wn.2d 609, 622, 664 P.2d 474 (1983); *Tate v. Perry,* 52 Wn. App. 257, 758 P.2d 999 (1988). Further, in a case where medical testimony is required to establish a causal relationship between the liability–producing situation and the claimed physical disability resulting from it, the evidence will be considered insufficient to support the trial verdict if it can be said that, considering all the medical testimony presented at trial, the jury must resort to speculation or conjecture in determining the causal relationship. *O'Donoghue,* 73 Wn.2d at 824. *See also Dennis v. Department of Labor & Indus.,* 109 Wn.2d 467, 745 P.2d 1295 (1987) (plaintiff's claim supported by the requisite medical expert testimony that, more probably than not, osteoarthritis in the plaintiff's wrists was made symptomatic and disabling by 38 years of repetitive tin snipping). *See also Herskovits v. Group Health Coop.,* 99 Wn.2d 609, 623, 664 P.2d 474 (1983) (Pearson, J., concurring) (whether plaintiff's medical expert's testimony satisfied the *O'Donoghue* standard of establishing that the act complained of—alleged delay in diagnosis—"probably" or "more likely than not" caused the patient's subsequent disability leading to his death from cancer).

It is not always necessary to prove every element of causation by medical testimony. If, from the facts and circumstances and the medical testimony given, a reasonable person can infer that the causal connection exists, the evidence is sufficient. *Bennett v. Department of Labor &*

*Indus.,* 95 Wn.2d 531, 533, 627 P.2d 104 (1981). Further, expert medical testimony is not necessary if the questioned practice of the professional is such a gross deviation from ordinary care that a lay person could easily recognize it. *Petersen v. State,* 100 Wn.2d 421, 437, 671 P.2d 230 (1983); *Breit v. St. Luke's Mem. Hosp.,* 49 Wn. App. 461, 464, 743 P.2d 1254 (1987).

In this case, the Court of Appeals held that "a review of the record indicates there is neither expert testimony nor facts obvious to a layman that the vasectomy procedure itself caused the excessive bleeding or led to the later consequences and medical difficulties of McLaughlin." The Court of Appeals properly concluded that no expert testified that Dr. Cooke violated the standard of care in performance of the vasectomy.

The Court of Appeals, however, erred in overturning the trial verdict for prejudicial error on contentions (1) and (2) of instruction 7. That instruction was correct under this court's decisions allowing claim summary instructions followed by cautionary language such as that contained in instruction 8 (WPI 20.05).[1] The trial record contains sufficient evidence, including requisite expert testimony, to support the jury verdict of $160,000 based on contentions (3) and (4) of instruction 7, involving claims of post–surgical negligence. The jury heard testimony of petitioner's medical expert, Michael E. Mayo, M.D., concluding that, to a reasonable degree of medical certainty, Respondent Cooke's failure to intervene sooner and remove the hematoma was a proximate cause of Petitioner McLaughlin's injury from complications resulting in necrosis and the removal of his right testicle.

---

[1]*Instruction 8 (WPI 20.05) provided:*

"The foregoing is merely a summary of the claims of the parties. You are not to take the same as proof of the matters claimed; and you are to consider only those matters which are established by the evidence. These claims have been outlined solely to aid you in understanding the issues."

A jury instruction which merely summarizes a plaintiff's claims is not prejudicial where the jury is also instructed to consider only those claims supported by the evidence. *Mulkey,* 65 Wn.2d at 122, and *Ketchum,* 73 Wn.2d at 340. Under *Ketchum,* this court will presume that the jury obeyed instruction 8 and based its verdict only on those contentions sufficiently supported by the evidence, that is, on contentions (3) and (4). *See also State v. Valpredo,* 75 Wn.2d 368, 373, 450 P.2d 979 (1969).

Respondent Cooke's remaining contentions challenge the trial court's instructions 9C[2] and 11, and the trial court's failure to give his proposed instruction 12,[3] which merely added one sentence to instruction 9C. He contends that the court's refusal to give his proposed instruction 12 was prejudicial error under *Watson v. Hockett,* 107 Wn.2d 158, 727 P.2d 669 (1986). The Court of Appeals did not address this question. This contention is without merit. Under *Watson,* instruction 9C adequately informed the jury that a physician is not responsible for a "bad result" unless it was proximately caused by the physician's lack of professional knowledge and skill and negligent failure to exercise it. The trial court properly refused Respondent Cooke's proposed instruction 12.

Instruction 11 (WPI 30.18) relates only to the surgical procedure and plaintiff's compensation for injuries suffered

---

[2]Instruction 9C stated:

"A physician employed to treat or administer to a patient does not and cannot ensure or in any sense guarantee a satisfactory result, nor is the physician responsible for unsatisfactory results of his treatment or care unless his own lack of professional knowledge and skill or his negligent failure to exercise it is the proximate cause of such result."

[3]Instruction 12 restated instruction 9C and added:

"The fact that in a particular case the complications result is not in itself any evidence that the treatment was improper or that the physician failed to exercise the professional knowledge and skill necessary to proper professional practice, nor is it any evidence that the physician failed to exercise his skill with reasonable care."

during surgery.[4] Because there is sufficient evidence in the trial record to support the jury verdict for respondent's negligence in post–surgery care, it is unnecessary to resolve issues of negligence in the surgical procedure itself. Under the facts in this case, it was not error for the court to give instruction 11. *See Kennedy v. Clausing,* 74 Wn.2d 483, 491, 445 P.2d 637 (1968).

### CONCLUSIONS

We conclude that instruction 7, which summarized the plaintiff's claims, was not prejudicial when read in conjunction with instruction 8, which directed the jury to consider "only those matters which are established by the evidence."

We also conclude that the jury verdict was supported by sufficient expert testimony that, within a reasonable degree of medical certainty, respondent violated the standard of care for a reasonably prudent physician in the post–operative care of petitioner.

We further conclude that there was sufficient expert testimony that, within a reasonable degree of medical certainty, respondent's failure to intervene sooner and remove a hematoma following petitioner's vasectomy was a proximate cause of complications suffered by petitioner, resulting in necrosis and the removal of his right testicle.

---

[4]Jury instruction 11 (WPI 30.18) stated:

"If you find that before this occurrence the plaintiff had a pre–existing bodily condition which was not causing pain or disability and further find that because of this occurrence that condition was lighted up and made active or that the condition made the plaintiff more subject to injury than a person in normal health, then, if your verdict is in favor of the plaintiff, you should consider the lighting up of the condition and all injuries and damages which were proximately caused by the occurrence, even though those injuries, due to that condition, may have been greater than those which would have been suffered by a normal person under the same circumstances. There may be no recovery, however, for any results which would have normally followed from the pre–existing condition had there been no incident."

We therefore reverse the Court of Appeals and reinstate the jury verdict which awarded $160,000 to Monte S. McLaughlin against Dr. Thomas R. Cooke.

UTTER, BRACHTENBACH, DOLLIVER, DORE, PEARSON, ANDERSEN, and DURHAM, JJ., and DORAN, J. Pro Tem., concur.

Reconsideration denied October 11, 1989.