

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

PATRICIA A. GRANT,

                Appellant,

    v.

CLAUDIO GABRIEL ALPEROVICH,
M.D.; ST. FRANCIS HOSPITAL-
FRANCISCAN HEALTH SYSTEM;
VALLEY MEDICAL CENTER; TRENT
NGUYEN, DO; MICHAEL K. HORI;
PACIFIC MEDICAL CENTER, INC.;
LISA OSWALD; SHOBA
KRISHNAMURTHY; MICHELE
PULLING; WM. RICHARD LUDWIG;
U.S. FAMILY HEALTH PLAN AT
PACIFIC MEDICAL CENTER, INC.,
VIRGINIA MASON HEALTHY SYSTEM;
and RICHARD C. THIRLBY,

                Respondents.

No. 69643-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: April 28, 2014

SPEARMAN, C.J. — Patricia Grant appeals the trial court's summary dismissal of her malpractice suit against a surgeon and several other healthcare providers and entities involved in her care following a surgical procedure. She challenges the court's decision to strike the expert's letter she submitted at the hearing on the defendants' motion for summary judgment. She claims the court further erred in concluding that even considering the expert's letter, Grant failed to meet her burden to establish a prima facie case of medical malpractice. We affirm.

## FACTS

In June 2009, Patricia Grant had a laparoscopic gastric bypass procedure at St. Francis Hospital. Dr. Claudio Alperovich performed the surgery. In the months that

followed the procedure, Grant suffered various complications and persistent symptoms, including nausea, vomiting, and the inability to tolerate solid food or thick liquids. Grant sought treatment and evaluation by many healthcare providers in the months following the surgery. She was hospitalized on a few occasions and underwent various diagnostic tests. In February 2010, approximately eight months after the initial surgery, Dr. Elliot Goodman in New York City performed a second surgery. During this surgery, he identified and treated a "Peterson's hernia." Clerk's Papers (CP) at 346. Most of Grant's symptoms eventually abated after the second surgery.

Pro se, Grant filed a "Complaint for Medical Negligence and Damages" in June 2012. CP at 3-13. She named more than a dozen defendants including individual treatment providers, hospitals, healthcare institutions, and an insurer. She alleged that the individual providers misdiagnosed, neglected, and mistreated her for various reasons. She also alleged that the providers conspired together to cover up the misdiagnoses and to attribute her medical issues to mental illness. Grant engaged in discovery by propounding discovery on many of the defendants, including requests for admissions, requests for production, and interrogatories.

In October 2012, all but two of the named defendants filed motions for summary judgment. One defendant, Dr. Michelle Pulling, argued that the claims against her should be dismissed because she was not served with a summons and complaint. Grant had not served Dr. Pulling or her employer, the University of Washington, nor had she filed a tort claim as required by RCW 4.92.100. The court entered an order dismissing the case against Dr. Pulling on October 29, 2012.

2

Dr. Alperovich and ten other defendants argued that Grant could not meet her burden to establish liability or causation. The defendants pointed to the absence of competent medical expert testimony to establish the elements of Grant's malpractice claims. Grant responded to the motions, and in support of her claims, submitted exhibits consisting of voluminous unauthenticated medical records.

At the November 9, 2012 hearing on the summary judgment motions, Grant produced an unsworn three-page letter written by Dr. Elliot Goodman, the New York surgeon who performed the second surgery on Grant in February 2010. In this letter, Dr. Goodman reviewed the events following the June 2009 procedure based on "selected" medical records provided by Grant. CP at 345. He states that Grant's ongoing complaints warranted surgical exploration. He claims there was a failure to timely diagnose and treat Grant's internal hernia, to which he attributes her problems following the gastric bypass. In conclusion, he states that there was a "deviation in the appropriate standard of care in the care and treatment rendered to Patricia Grant by Dr. Alperovich and the other physicians treating the patient during the period between June 2009 and January 2010." CP at 346.

The trial court struck the untimely and unsworn letter. Notwithstanding, the court determined that even if Dr. Goodman's letter was admissible, it was not sufficient to establish that any of the defendants deviated from the applicable standard of care or caused injury to the plaintiff. In five separate orders, the trial court dismissed the claims against eleven defendants.[1]

---

[1] Although Grant designated all five orders entered on November 9, 2012 in her notice of appeal, one of the orders entered that day dismissing claims against Virginia Mason and Dr. Richard Thirlby is not included in the record on review.

Several months later, the court entered a separate order dismissing the claims with respect to the two remaining defendants in the case, Valley Medical Center and Dr. Triet Nguyen, based on lack of jurisdiction because neither defendant was properly served with a summons and complaint. Grant appeals.

## ANALYSIS

Proceeding pro se on appeal, Grant challenges the orders of dismissal below on a variety of bases. Primarily, Grant contends that the trial court erred by refusing to consider Dr. Goodman's letter. She also challenges the court's conclusion that her evidence was insufficient to raise a genuine issue of material fact for trial.

We review an order of summary judgment de novo, engaging in the same inquiry as the trial court. Ranger Ins. Co. v. Pierce Cy., 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Summary judgment is proper if the records on file with the trial court show "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c). As in the trial court, we construe all facts and reasonable inferences in the light most favorable to the nonmoving party. Michael v. Mosquera-Lacy, 165 Wn.2d 595, 601, 200 P.3d 695 (2009).

Actions for damages occurring as a result of health care are controlled exclusively by statute, regardless of how a claim is characterized. RCW 7.70.030; Branom v. State, 94 Wn. App. 964, 969, 974 P.2d 335 (1999). To establish a claim of medical malpractice under RCW 7.70.030(1), the plaintiff must prove: (1) the defendant failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs,

in the state of Washington, acting in the same or similar circumstances; and (2) this failure was a proximate cause of the plaintiff's injury.

Expert testimony is required to establish the standard of care and whether the physician met that standard. Young v. Key Pharms., Inc., 112 Wn.2d 216, 228, 770 P.2d 182 (1989). "What is or is not standard practice and treatment in a particular case, or whether the conduct of the physician measures up to the standard is a question for experts and can be established only by their testimony." Young, 112 Wn.2d at 228-29 (quoting Hart v. Steele, 416 S.W.2d 927, 932, 37 A.L.R.3d 456, 462 (Mo.1967)). The policy behind this rule is to "prevent laymen from speculating as to what is the standard of reasonable care in a highly technical profession." Douglas v. Bussabarger, 73 Wn.2d 476, 479, 438 P.2d 829 (1968). Expert testimony is also required to establish most aspects of causation in a medical malpractice action. Seybold v. Neu, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001). This medical testimony must be based upon a reasonable degree of medical certainty. McLaughlin v. Cooke, 112 Wn.2d 829, 836, 774 P.2d 1171 (1989).

Summary judgment is proper if the plaintiff lacks competent medical evidence to establish a prima facie case. Young, 112 Wn.2d at 225; Morinaga v. Vue, 85 Wn. App. 822, 832, 935 P.2d 637 (1997). If a defendant files a motion alleging the lack of such evidence, the plaintiff must then present competent evidence to rebut the defendant's initial showing of the absence of a material issue of fact. Young, 112 Wn.2d at 227. Here, the defendants' motions shifted the burden to Grant to produce an affidavit from a qualified expert alleging specific facts to support a cause of action. See Guile v. Ballard Cmty. Hosp., 70 Wn. App. 18, 25, 851 P.2d 689 (1993).

5

Grant argues that she submitted competent medical evidence, but the trial court disregarded it because of a "technicality." Appellant's Brief (App. Br.) at 18. A court's ruling to strike evidence is reviewed for abuse of discretion. Southwick v. Seattle Police Officer John Doe Nos. 1-5, 145 Wn. App. 292, 297, 186 P.3d 1089 (2008). In this case, there were two legitimate reasons why the trial court struck the evidence. First, Grant failed to timely submit the letter in response to the defendants' motions. See CR 56(c) (adverse party may file affidavits, memoranda, or other documents no later than 11 calendar days before the hearing). The defendants had no opportunity to respond to Dr. Goodman's letter prior to the hearing because Grant did not make the court or the parties aware of it until the hearing was underway. And more importantly, CR 56(e) requires evidence offered in support of or in opposition to a motion for summary judgment be in the form of sworn affidavits or declarations made under penalty of perjury. It is well-established in this context that without more, an unsworn letter discussing alleged negligent treatment is not sufficient to create a genuine issue of material fact. See Young Soo Kim v. Choong-Hyun Lee, 174 Wn. App. 319, 326-27, 300 P.3d 431 (2013). For these reasons, the trial court acted well within its discretion in striking the unsworn and untimely letter.

But the trial court did not dismiss Grant's case merely because of the timing and form of Grant's evidence. The court concluded that even ignoring these deficiencies, the letter was insufficient to establish a factual basis for Dr. Goodman's conclusions. The physicians named as defendants, practice in a variety of specialties. Yet, Dr. Goodman does not address the standard of care for physicians of any specialty in

Washington State or elsewhere.[2] Although he states generally that surgical exploration should have happened earlier, he does not identify any specific act that deviated from the standard of care. He mentions only two physicians by name, but does not specify any negligent acts or omissions with respect to those physicians.

Dr. Goodman attributes Grant's symptoms to the presence of the hernia that he surgically repaired in February 2010. He asserts that there was unreasonable delay in diagnosing the condition between June 2009 and January 2010. However, he does not say when that condition existed with any degree of certainty or precision. Dr. Goodman's letter acknowledges that diagnostic testing was performed in July and December of 2009, but he does not suggest that any testing indicated the presence of the hernia. He states, without explanation, that the hernia "most likely" existed for several months before the February 2010 surgery. CP at 347. And while Dr. Goodman suggests that surgical exploration should have occurred even considering the lack of evidence of an anatomical cause for the problem, he does not claim that the approach he describes represents the standard practice.

In sum, the letter does not demonstrate that any of the physicians failed to exercise the degree of care of a reasonably prudent health care provider, violated of Washington's standard of care, or that their actions proximately caused Grant's injuries. Because Grant failed to meet her burden to defeat summary judgment by producing

---

[2] Grant suggests that her expert was not required to testify about the standard of care in Washington because Washington standards are no different from national standards with regard to gastric bypass surgery. But expert testimony is required to establish that this is the case. Grant's expert's letter does not address the issue of national versus local standards, does not describe any standard of care, nor explain how it applies in the circumstances of Grant's case.

7

competent medical evidence to support her malpractice claims, the trial court properly granted the defendants' motions for summary judgment.

The dismissal of claims against Dr. Pulling, Valley Medical Center, and Dr. Nguyen was based on lack of jurisdiction, not lack of evidence. Grant does not raise specific arguments with respect to these two orders of dismissal except, again, to characterize them as based on "technicalities." App. Br. at 24. But the law is clear that proper service of the summons and complaint is a prerequisite to the court obtaining jurisdiction over a party. See Woodruff v. Spence, 76 Wn. App. 207, 209 883 P.2d 936 (1994). Grant does not dispute, here or below, that she failed to personally serve the three defendants whose claims were dismissed on this ground. The dismissals were proper.

Grant suggests that the court unfairly dismissed her complaint without allowing sufficient time for discovery. But a motion for summary judgment follows commencement of an action and some opportunity for discovery. The record here demonstrates that Grant used the discovery process to obtain information from several defendants.

CR 56(c) also requires 28 days' notice of the hearing and has its own continuance provision—CR 56(f)—for any party who can demonstrate why he or she is unable, without further discovery, to oppose the motion. Although Grant argued that the court should deny summary judgment and allow further discovery to proceed, she did not specifically request a continuance in writing or at the hearing. Even if she had made such a request, a trial court may refuse to continue proceedings for a number of reasons:

8

(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.

Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989). One qualifying ground is sufficient for denial. Gross v. Sunding, 139 Wn. App. 54, 68, 161 P.3d 380 (2007).

Had Grant filed an affidavit stating that she needed more time to gather facts to oppose summary judgment, she still had to identify evidence she expected to develop with additional discovery and explain why it would help. Grant failed to do so. Grant was not denied the opportunity to develop evidence in support of her claim. Nor does she demonstrate that she would have been entitled to a continuance, had she requested one.

Finally, Grant claims that the trial court was biased against her because of her status as a pro se litigant and treated her unfairly by holding her to the same standard as the attorneys representing the defendants. But as with all pro se litigants, Grant is properly held to the same standard as an attorney. Westberg v. All-Purpose Structures, Inc., 86 Wn. App. 405, 411, 936 P.2d 1175 (1997).

We have no doubt that Grant was at a significant disadvantage because she was unrepresented and we have considered all of her examples in support of her claim of bias. However, after carefully examining the available record, we have discovered no evidence that the trial court discriminated against Grant because of her pro se status or for any other reason. Instead, it appears that the court displayed considerable patience with Grant and appropriate sensitivity to her position.

We affirm the orders dismissing the claims against all defendants.

Spencer, C.J.

WE CONCUR:

Dwyer, J.                    Cox, J.