FILED
COURT OF APPEALS
DIVISION II

2014 SEP 23 AM 9: 33

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MICHAEL FOSS, an individual, | No. 44856-4-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, P.J. — Michael Foss filed a negligence complaint against the State of

Washington for medical care that he had received while in the custody of the Department of

Corrections. The State moved for summary judgment, and the trial court granted the State's

motion, because Foss had presented no expert medical testimony establishing standard of care or

causation. Foss appeals, asserting that the trial court erred by granting summary judgment in

favor of the State. We affirm.

## FACTS

In August 2008, Michael Foss had an eye exam while being processed for incarceration

with the Department of Corrections (DOC). The eye exam included a check of fluid pressure

inside Foss's eye, which showed he had normal intraocular pressure. In September 2008, Foss

was transferred to Olympic Corrections Center (OCC), a minimum security work camp near Forks, Washington. Upon his transfer to OCC, Foss was examined by Dr. Clifford Johnson, a DOC physician who saw OCC patients twice a week. Johnson did not conduct an eye exam at that time due to Foss's recent eye examination the previous month, but he noted Foss's medical history of retinal detachment in the right eye.

On December 14, 2008, Foss submitted a "Health Services Kite," in which he stated:

> I have been experiencing pain [and] discomfort in my right eye. I am getting headaches on the right side a couple times a day. I also seem to be losing some vision clarity [and] peripheral vision. . . . My surgeon told me to watch my eye pressure and for gla[u]coma. My symptoms may be the onset of gla[u]coma. Could I please be allowed to get the pressure checked in my eye(s) so if it is gla[u]coma I can start the drops to control it?
> . . . .

Clerk's Papers (CP) at 105. In response to his request, Johnson examined Foss on December 18.

Johnson noted that Foss had a cataract in his right eye, which was likely a side effect of Foss's earlier retinal surgery in 2005. Because of the cataract, Johnson could not examine Foss's optic nerve. Johnson advised Foss to have his intraocular pressure checked by a specialist. Johnson told Foss that an intraocular pressure check could not be performed at OCC because OCC lacked the proper equipment and, thus, Foss would need to be transported to another DOC facility for further testing. Foss declined to be transported to another DOC facility for further medical testing, and Johnson cautioned "that if the pain returns, he needs to have it checked out immediately[ and i]f the pain became very severe, he is to talk to his custody officer and go to the emergency room." CP at 29.

On December 22, Foss submitted another Health Services Kite that stated, "I saw the doctor on 12/19/08 about my eye. Could I please see him again ASAP[?] Thank you[.] My eye

still hurts badly. Gla[u]coma." CP at 106. Johnson conducted an examination of Foss on December 24, at which time Foss agreed to be transported to Clallam Bay Corrections Center (CBCC) for additional medical testing. Foss was transported to CBCC on December 29, the first available date for transfer following the Christmas holiday. A CBCC medical specialist examined Foss that same day and performed an intraocular pressure test. The test showed that Foss had abnormally high pressure in his right eye, which is a risk factor for developing glaucoma. The specialist prescribed and immediately treated Foss with a topical medication to lower the pressure in his right eye. Foss's prison medical records show that his intraocular pressure responded to the topical medication and returned to a normal pressure range. Foss had additional intraocular pressure checks in January and February 2009, which showed a normal pressure range.

On February 22, 2012, Foss filed a complaint that alleged he had received negligent health care while housed at the OCC, which negligent health care caused "essentially total loss of useful vision in his right eye." CP at 6. The State filed a summary judgment motion asserting that Foss could not support the necessary elements of his medical negligence claim because he lacked expert medical testimony to determine the standard of care and to prove causation. The State's summary judgment motion also asserted that Foss had failed to comply with the claim filing statute and the statute of limitations. The superior court granted the State's motion and dismissed Foss's suit with prejudice. Foss timely appeals.

## ANALYSIS[1]

Foss contends that the trial court erred by granting the State's motion for summary judgment. Because Foss has failed to establish a prima facie case for medical negligence supported by expert testimony, we affirm the trial court summary judgment ruling.

We review a trial court's summary judgment ruling de novo. *Dean v. Fishing Co. of Alaska, Inc.*, 177 Wn.2d 399, 405, 300 P.3d 815 (2013). When reviewing a trial court's summary judgment ruling, we consider the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party, here Foss. *Fabre v. Town of Ruston*, 180 Wn. App. 150, 158, 321 P.3d 1208 (2014). "Summary judgment in favor of the defendant is proper if the plaintiff fails to make a prima facie case concerning an essential element of his or her claim." *Seybold v. Neu*, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001) (citing *Young v. Key Pharm.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989)).

To establish a prima facie case for negligence, a plaintiff must show "(1) the existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause between the claimed breach and resulting injury." *Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677 P.2d 166 (1984). Specifically, in the context of medical negligence claims, RCW 4.24.290 provides:

---

[1] As an initial matter, our Supreme Court's recent decision in *McDevitt v. Harbor Medical Ctr.*, 179 Wn.2d 59, 316 P.3d 469 (2013), holding that the 90-day presuit notice requirement of former RCW 7.70.100(1) (2006) was constitutional as applied to a State defendant, does not control the outcome of Foss's appeal. Although Foss did not adhere to former RCW 7.70.100's 90-day presuit notice requirements in reliance on our Supreme Court's earlier opinion in *Waples v. Yi*, 169 Wn.2d 152, 234 P.3d 187 (2010), the *McDevitt* court announced that its holding would have "prospective-only application." 179 Wn.2d at 75. And Foss filed his suit before our Supreme Court issued its opinion in *McDevitt*.

In any civil action for damages based on professional negligence against . . . a member of the healing arts including . . . a physician . . . the plaintiff in order to prevail shall be required to prove by a preponderance of the evidence that the defendant or defendants failed to exercise that degree of skill, care, and learning possessed at that time by other persons in the same profession, and that as a proximate result of such failure the plaintiff suffered damages.

RCW 7.70.040[2] similarly provides:

The following shall be necessary elements of proof that injury resulted from the failure of the health care provider to follow the accepted standard of care:

(1) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances;

(2) Such failure was a proximate cause of the injury complained of.

It has been well established that, in general, expert testimony is required to determine the standard of care and to prove causation in medical negligence cases. *See, e.g., McLaughlin v. Cooke*, 112 Wn.2d 829, 836, 774 P.2d 1171 (1989) (citation omitted) ("Expert testimony is necessary to prove whether a particular practice is reasonably prudent under the applicable standard of care. Usually, the standard of care must be established by expert testimony."); *Harris v. Groth*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983) ("In general, expert testimony is required when an essential element in the case is best established by an opinion which is beyond the expertise of a layperson."); *Seybold*, 105 Wn. App. at 676 ("[E]xpert testimony is required to establish the standard of care and most aspects of causation in a medical negligence action."); *Morinaga v. Vue*, 85 Wn. App. 822, 831, 935 P.2d 637 (1997) ("Absent exceptional circumstances, a patient must produce expert testimony to establish if the practice questioned is

---

[2] Laws of 2011, ch. 336, § 251 amended former RCW 7.70.040 (1983), adding language to eliminate the gender-specific reference contained in the former version of the statute.

reasonably prudent."). Thus, a defendant to a medical negligence suit is entitled to summary judgment where the plaintiff lacks competent expert testimony. *Guile v. Ballard Comm. Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993).

Foss admits that he lacks competent expert testimony to support his medical negligence claim but argues that expert testimony is not required to support his claim under the rule announced in *Helling v. Carey*, 83 Wn.2d 514, 519 P.2d 981 (1974). We disagree.

In *Helling*, our Supreme Court held that the defendant ophthalmologists were negligent as a matter of law for failing to timely perform eye pressure tests on the plaintiff despite the undisputed medical expert testimony that the standard of the profession did not require routine pressure tests for persons under 40 years of age. 83 Wn.2d at 517-19. In so holding, the *Helling* court established "that reasonable prudence may require a standard of care higher than that exercised by the relevant professional group." *Gates v. Jensen*, 92 Wn.2d 246, 247, 595 P.2d 919 (1979) (citing *Helling*, 83 Wn.2d 514).

Foss is correct that neither RCW 4.24.290 nor former RCW 7.70.040, both of which were enacted after the *Helling* decision, abrogated the reasonable prudence standard announced in *Helling*. *See Gates*, 92 Wn.2d at 253; *Harris*, 99 Wn.2d at 447. Foss is incorrect, however, that the reasonable prudence standard relieves him of the obligation to produce expert medical testimony to support the elements of his medical negligence claim.

Our Supreme Court explained in *Harris* that "[m]edical facts in particular must be proven by expert testimony unless they are 'observable by [a layperson's] senses and describable without medical training.'" 99 Wn.2d at 449 (alteration in original) (quoting *Bennett v. Department of Labor & Indus.*, 95 Wn.2d 531, 533, 627 P.2d 104 (1981)). The *Harris* court

reasoned that the requirement that a plaintiff produce medical testimony to establish the standard of care and to prove causation "remain[ed] true even under the reasonable prudence standard of care, since the factual question of whether a particular medical practice is reasonably prudent is generally neither observable by or describable by a layperson." 99 Wn.2d at 449 n. 6.

*Harris* acknowledged, "In some exceptional circumstances, laypersons may be capable of balancing the costs and benefits of a particular procedure and deciding whether it was reasonably prudent." 99 Wn.2d at 449 n. 6. But *Harris* further explained that "[t]his will be true, however, only when the underlying costs and probabilities can be expressed in relatively exact quantitative terms and there are no significant judgment factors involved. *Moreover, these underlying facts must be proven by expert testimony.*" 99 Wn.2d at 449 n. 6 (emphasis added) (citation omitted). Thus, even in the "exceptional" case where laypersons could determine whether a physician's decision to conduct or not to conduct a medical procedure was reasonably prudent under the circumstances, a plaintiff must still produce expert medical testimony to establish the costs and benefits of performing the medical procedure at issue, which Foss has failed to do. *Harris,* 99 Wn.2d at 449 n. 6.

Here, absent expert medical testimony establishing the standard of care and causation, a jury would have to speculate as to whether Dr. Johnson's conduct in recommending Foss transfer to a different DOC facility for an intraocular pressure test, which Foss had refused, rather than recommending he be sent to an emergency room at a nearby hospital, was reasonably prudent under the circumstances. A jury would also have to speculate as to whether Dr. Johnson's conduct caused Foss's alleged vision loss. Thus, this is not the "exceptional" case, as in *Helling*, where laypersons could determine whether a physician's medical decision was reasonably

No. 44856-4-II

prudent under the circumstances. And, even were this such an exceptional case, Foss failed to produce expert medical testimony to establish the costs and benefits underlying Dr. Johnson's medical decision.

Accordingly, we affirm the trial court's ruling granting summary judgment in favor of the State. Because we affirm the summary judgment on the grounds that Foss failed to establish a prima facie case for medical negligence supported by expert testimony, we need not reach the State's arguments regarding Foss's failure to comply with the claim filing statute and the statute of limitations.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Maxa, J.

Lee, J.

8